**1318**

UNITED STATES of America,
Plaintiff-Appellant,

v.

Horacio SARMIENTO–ROZO, Arnoldo Adaulfo Guerra-Curvelo, Nemesio Medina-Martinez, Gabriel Guerra-Cuvelo, Uberto Medina-Martinez, Manuel Guerra-Alejandro, Fuentes Medrano-Dalmiro, Domingo Manuel Guerra-Pitalua and Nemesio Gomez-Rodriguez, Defendants-Appellees.

No. 78–1314.

United States Court of Appeals,
Fifth Circuit.

April 12, 1979.

Rehearing Denied May 30, 1979.

Jack V. Eskenazi, U. S. Atty., Kevin Moore, Asst. U. S. Atty., Miami, Fla., Mervyn Hamburg, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Theodore J. Sakowitz, Federal Public Defender, Lurano Snow, David K. Kelley, Jr., Asst. Federal Public Defenders, Miami, Fla., Jack R. Nageley, Miami Beach, Fla., for defendants-appellees.

Before WISDOM, GOLDBERG, and VANCE, Circuit Judges.

WISDOM, Circuit Judge:

The government appeals the district court's dismissal of an indictment of eight Colombian seamen charged with attempted importation of marijuana in violation of 21 U.S.C. § 963. The sole question addressed by the district court, apparently one of first impression in this Circuit, was whether it

had subject matter jurisdiction to try the foreign crew members of a foreign vessel found in international waters for the offense of attempted importation of marijuana.[1] Answering that question in the negative, the district court ordered that the defendants be released from custody. Immediately after their release, the defendants were deported from the United States. We do not reach the jurisdictional question; we hold that the defendants' deportation renders this appeal moot.

## I.

The United States Coast Guard cutter STEADFAST sighted a vessel on the high seas, within the contiguous waters of the Bahamian Island of Eleuthera, on November 12, 1977. At the time of sighting, the vessel was about 160 miles off the coast of the United States and headed in a northwesterly direction. Three temporary name boards lashed to the sides and stern of the vessel displayed the name "CAYBUR." Noting that the CAYBUR flew no flag and had no home port painted on its box, the Coast Guard cutter approached the vessel and inquired as to her nationality and home port. When the CAYBUR did not answer, the STEADFAST radioed to the Coast Guard operations center in Miami, and received directions to board the CAYBUR to determine its nationality. Immediately before boarding, one of the crew of the CAYBUR hoisted a Honduran flag.

On boarding the CAYBUR, the Coast Guard officers searched for the vessel's main beam number and name to aid in identifying her. During the search one of the officers with a keen sense of smell thought he detected "the faint odor of marijuana" in the forward hold. The search party pried open the steel hatch cover seal-ing the forward hold and discovered about 200 bales of marijuana. Another 400 bales of marijuana were found in the afterhold. The CAYBUR was then taken to calmer waters off the shore of the Bahamas and searched again. In that search the Coast Guard discovered papers issued by Venezuela, identifying the vessel as the GUASARE I, and flags of various South and Central American countries.

The Coast Guard brought the CAYBUR and her crew, all Colombian citizens, to the United States. The government charged the defendants with attempted importation of marijuana, 21 U.S.C. § 963. Before the trial, the defendants moved to dismiss the indictment for lack of subject matter jurisdiction and lack of authority to board the vessel. They also moved to suppress the evidence on the ground that the CAYBUR was illegally searched. The magistrate recommended that both motions be granted. The district court, expressing judgment only on the issue of subject matter jurisdiction, dismissed the indictment.

The district court's order was issued on the ninetieth day after the defendants had been taken into custody. Complying with the Speedy Trial Act, 18 U.S.C. § 3164(c), which limits pretrial custody to ninety days, the court ordered that the defendants be released from custody. A three-judge panel of this Circuit denied the government's application for a stay of the district court's order pending this appeal. The defendants were therefore released into the custody of the Immigration and Naturalization Service and immediately deported.

## II.

"[A]n actual controversy must exist at [all] stages of appellate or certiorari

---

1. This Circuit has held that there was subject matter jurisdiction to try the Colombian crew members of a foreign vessel seized in international waters charged with conspiracy to import marijuana when one of the co-conspirators committed overt acts within the United States. *United States v. Cadena*, 5 Cir. 1978, 585 F.2d 1252. In *United States v. Cortes*, 5 Cir. 1979, 588 F.2d 106, we applied *Cadena* to Colombian crew members of a foreign vessel, arrested on the high seas, and indicted, with two United States co-conspirators, for conspiracy to import marijuana.

review and not simply at the date the action is initiated." *Roe v. Wade*, 1973, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147. The deportation of the defendants after the judgment of the district court was rendered has deprived the controversy in this case of any "impact of actuality". The defendants cannot be tried in absentia; they have a constitutional right to be present at their trial, to testify on their own behalf, and to confront the witnesses against them. Cf. *United States v. Calzada*, 7 Cir. 1978, 579 F.2d 1358. Because a trial in accord with the Constitution cannot and will not ensue, we decline to review the theoretical question whether the district court has subject matter jurisdiction to try these defendants.

The government, insisting that it will suffer varying kinds of harm if this case is held moot, would have us analogize the defendants' departure from the country to the escape of a convicted defendant, which "does not strip the case of its character as an adjudicable case or controversy" but rather permits the court to accept or decline jurisdiction at its discretion. *Molinaro v. New Jersey*, 1970, 396 U.S. 356, 366, 90 S.Ct. 498, 24 L.Ed.2d 586. But *Molinaro* involved an escape *after* trial and conviction in the district court. Needless to say, the defendants are not fugitives from justice; they have been forcibly deported by another arm of the government. In the case of a convicted defendant who has escaped, several circumstances, entirely lacking in the case before us, ensure an adjudicable controversy: a full trial has already been held, the investment of judicial resources is plain, and the appellate court reviews the record with the knowledge that its decision will have substantial impact on the defendant at the moment he is apprehended. *See Van Blaricom v. Forscht*, 5 Cir. 1974, 490 F.2d 461, 463 (J. Rives, dissenting).

We also reject the government's contention that the possible recurrence of the issue presented in this case justifies our continued exercise of appellate jurisdiction.

We do not doubt that the Coast Guard will continue to patrol the high seas, stopping vessels similar to the CAYBUR, in its zeal to protect the United States from illicit imports. Whether the courts have subject matter jurisdiction to try the foreign crew members of vessels seized on the high seas is a question that will recur; its resolution is important to future law enforcement activities. Nevertheless, this case does not fall within the narrow class of cases saved from mootness because they present issues "capable of repetition, yet evading review". *Southern Pacific Terminal Co. v. I. C. C.*, 1911, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310. The difficulty in securing appellate review of this case resulted from the unique combination of the issuance of the district court's order declining jurisdiction on the ninetieth day of confinement, the immediate deportation of the defendants, and the refusal of a panel of this Circuit to grant a stay of the district court's order. Ordinarily, the issue in this case need not evade review. Indeed, other cases presenting substantially similar questions of subject matter jurisdiction over foreign crewmen arrested on the high seas have been reviewed by this Court, either because the district court ruled in favor of jurisdiction, *see United States v. Cadena*, 5 Cir. 1978, 585 F.2d 1252, or because a panel of this Circuit granted a stay, *see United States v. Cortes*, 5 Cir. 1979, 588 F.2d 106.

The government's final contention is that the "mere possibility" that it will suffer collateral legal consequences from the decision of the district court "is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness' ". *Sibron v. New York*, 1968, 392 U.S. 40, 55, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917. The potential disabilities mentioned by the government are the use of the district court decision as the law of the case in a civil suit by the Columbian defendants for damages from the boarding, search, and seizure of the CAYBUR, and the confiscation of her contents, and as a bar to any future prosecution of the defendants should they return to the United States.

The recognition that some adverse consequences will almost always follow from a criminal conviction has provided the basis for holding that a defendant may challenge his conviction even if he has fully served his sentence. The inability to impose adverse collateral consequences on a defendant who has served his sentence "following the reversal of the conviction of a criminal defendant is also sufficient to enable the state to seek review". *Pennsylvania v. Mimms*, 434 U.S. 106, 108, n.3, 98 S.Ct. 330, 54 L.Ed.2d 331 (per curiam). The courts have been sensitive to the mere possibility of collateral consequences only in criminal cases following imposition of a criminal sanction. *See also Benton v. Maryland*, 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. In the case before us, there has been no criminal conviction and no equivalent restraint on the government's ability to impose legal disabilities on the defendants.

▪ Moreover, our disposition of the instant case will prevent the flow of any adverse legal consequences from the district court's decision. Following the guidelines of the Supreme Court, *see United States v. Munsingwear, Inc.*, 1950, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36, we dismiss the appeal, vacate the judgment of the district court, and remand the case to the district court with instructions to dismiss the indictment as moot. When a case becomes moot on appeal, this procedure protects the parties from the prejudice that may flow from a standing judgment which has become unreviewable and removes any res judicata or precedential effect which the judgment might otherwise have. *See Bowers v. United States, Board of Parole*, 5 Cir. 1977, 544 F.2d 898; *Troy State University v. Dickey*, 5 Cir. 1968, 402 F.2d 515, 516–17. *New Left*

*Education Project v. Board of Regents of the University of Texas System*, 1973, 414 U.S. 807, 94 S.Ct. 118, 38 L.Ed.2d 43, *reversing* 5 Cir., 472 F.2d 218. The government will not be bound by the district court decision in a later civil suit[2] nor barred from criminal prosecution of these defendants should they return to the United States.

APPEAL DISMISSED; JUDGMENT VACATED AND REMANDED WITH INSTRUCTIONS.

2. It is unlikely that the district court's decision would have adverse consequences for the government in a later civil suit in any event. Although the magistrate made findings of fact adverse to the government with respect to the boarding, search, and seizure by the Coast Guard of the CAYBUR and her contents, the factual findings of the magistrate were adopted by the district court only insofar as they related to the question of subject matter jurisdiction. Because the district court refused to make a finding that the CAYBUR or the bales of marijuana were confiscated during an unlawful search and seizure, there is no law of the case binding in a collateral civil suit.