# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50828

United States Court of Appeals
Fifth Circuit

**FILED**
August 8, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellant

v.

CARLOS PEDROZA-ROCHA,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before KING, ELROD, and ENGELHARDT, Circuit Judges.

PER CURIAM:

The district court dismissed Carlos Pedroza-Rocha's indictment for illegal reentry following removal under 8 U.S.C. § 1326, finding that the immigration judge in the underlying removal proceeding lacked jurisdiction. While this appeal was pending, this court issued an opinion in an analogous immigration appeal that forecloses the arguments advanced by Pedroza-Rocha that were adopted by the district court below. For that reason, we REVERSE and REMAND.

## I.

Defendant–appellee Carlos Pedroza-Rocha, a citizen of Mexico without lawful status in the United States, entered the country on or about March 12,

No. 18-50828

2003. He was not admitted or paroled by an immigration officer. Shortly thereafter, Pedroza-Rocha pleaded guilty in Texas state court to the crime of burglary of a habitation and was sentenced to ten years of community supervision. Around the same time, the Government issued Pedroza-Rocha a notice to appear ("NTA") for removal proceedings before an immigration judge ("IJ"). The NTA informed Pedroza-Rocha that he was present in the United States without lawful status and was therefore removable. It also specified the place where Pedroza-Rocha was to appear, but not the date and time, instead stating only that the date and time were "to be set." Around two months later, the immigration court issued a notice of hearing to Pedroza-Rocha, which specified the date and time for Pedroza-Rocha's hearing. At the hearing, the IJ ordered Pedroza-Rocha removed from the United States, and the resulting removal order (the "2003 Removal Order") was entered on May 27, 2003.

In 2009, Pedroza-Rocha was again discovered in the United States when he was arrested for drunk driving in El Paso, Texas. Shortly thereafter, Pedroza-Rocha pleaded guilty in federal court to illegally reentering the United States after removal in violation of 8 U.S.C. § 1326. He was sentenced to 10 months in prison. Additionally, the state court revoked his term of community supervision for the 2003 burglary conviction, and it sentenced him to two years in prison on that charge. Following his release from state custody, the Government reinstated the 2003 Removal Order and removed Pedroza-Rocha to Mexico. In 2011 and again in 2015, Pedroza-Rocha unlawfully reentered the United States and was removed, again through reinstatement of the 2003 Removal Order.

In May of 2017, after having been removed four times pursuant to the 2003 Removal Order, Pedroza-Rocha was arrested for assault in El Paso. A federal grand jury thereafter indicted Pedroza-Rocha for illegal reentry under § 1326. This case concerns that indictment.

2

No. 18-50828

Pedroza-Rocha moved to dismiss the indictment, arguing that the 2003 Removal Order could not support a conviction. Pointing to the recent Supreme Court decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), Pedroza-Rocha argued that the NTA he received in 2003 (which resulted in the 2003 Removal Order) was invalid because it did not include a date and time for his hearing. Immigration regulations provide that jurisdiction vests upon the filing of a "charging document," which includes an NTA. 8 C.F.R. §§ 1003.13-14.[1] Thus, Pedroza-Rocha reasoned, the IJ in the 2003 proceeding lacked subject-matter jurisdiction, and the 2003 Removal Order was a nullity.

The district court agreed with Pedroza-Rocha and dismissed the indictment. Citing *Pereira,* the district court held that the defect in the 2003 NTA (the absence of a date and time for the removal hearing) divested the IJ of jurisdiction to enter the 2003 Removal Order. Because the IJ had no jurisdiction, the district court reasoned, each subsequent removal (each predicated on reinstatement of the 2003 Removal Order) was also invalid. The district court then concluded that, because the 2003 Removal Order was invalid, each time that Pedroza-Rocha was removed pursuant to the 2003 Removal Order, he was not "removed" for purposes of § 1326, and therefore could not be convicted under that statute. The district court held, in the alternative, that Pedroza-Rocha was permitted to collaterally attack under § 1326(d) the 2003 Removal Order and each subsequent removal based on that order. The district court therefore dismissed the indictment. The Government

---

[1] Section 1003.14(a) provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." Section 1003.13, in turn, defines a "charging document" as "the written instrument which initiates a proceeding before an Immigration Judge," including "a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien."

3

No. 18-50828

now appeals. During the pendency of this appeal, the Department of Homeland Security removed Pedroza-Rocha to Mexico.

## II.

## A.

Pedroza-Rocha first argues that his deportation during the pendency of this appeal moots this case. This court has a continuing obligation to assure itself of its own jurisdiction, sua sponte if necessary. *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1021 (5th Cir. 1999). Article III's grant of federal jurisdiction requires a live controversy at all stages of a case. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). If the controversy between the parties is extinguished while a case is pending on appeal, this court must dismiss it as moot. *Id.* "A case becomes moot, however, 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).

This court has once before considered the question of whether a defendant's removal moots the Government's appeal from a district court's dismissal of an indictment. In *United States v. Sarmiento-Rozo*, 592 F.2d 1318 (5th Cir. 1979), the defendants—Colombian nationals arrested on the high seas—had been indicted for attempting to import marijuana. *Id.* at 1319. The district court dismissed the indictment on the grounds that it lacked subject-matter jurisdiction. *Id.* Shortly after the district court's dismissal of the indictment, the defendants were removed to Colombia. *Id.* One question on appeal was whether the defendants' removal mooted the case. The court held that it did. The court reasoned that if it were to conclude that the indictment was wrongly dismissed, it could not afford the Government any relief because "[t]he defendants cannot be tried in absentia" because they "have a constitutional right to be present at their trial, to testify on their own behalf, and to confront the witnesses against them." *Id.* at 1320. The court was

4

unpersuaded by the Government's contention that it would suffer collateral legal consequences (e.g., the district court decision being used as the law of the case in a parallel civil suit against the defendants) if the court failed to intervene, writing that "courts have been sensitive to the mere possibility of collateral consequences only in criminal cases following imposition of a criminal sanction." *Id.* at 1321. In the case before it, however, the court explained that "there has been no criminal conviction and no equivalent restraint on the government's ability to impose legal disabilities on the defendants." *Id.* The court therefore vacated and remanded to the district court with instructions to dismiss the indictment as moot.

In the intervening years, the Supreme Court weighed in on this issue, albeit briefly in a footnote. In *United States v. Villamonte-Marquez*, 462 U.S. 579 (1983), the defendants were convicted of various drug crimes, but the convictions were reversed on appeal on Fourth Amendment grounds. *Id.* at 583-84. Before the case reached the Supreme Court, the defendants were deported and the charges against them were dismissed with the consent of the Government. *Id.* at 581 n.2. The defendants "briefly" argued that this mooted the case, citing *Sarmiento-Rozo*. *Id.* The Supreme Court acknowledged that *Sarmiento-Rozo* "provide[d] some authority for [the defendants'] argument" but nevertheless "reject[ed] the contention." *Id.* The Court noted the "possibility that [the defendants] could be extradited and imprisoned for their crimes, or if [the defendants] manage to re-enter this country on their own they would be subject to arrest and imprisonment for these convictions." *Id.* Since reversal of the appeals court's judgment would reinstate that conviction, the Court found it was in a position to afford relief to the Government with a favorable disposition and therefore found that a live controversy persisted. *Id.*

We read *Villamonte-Marquez*, at the very least, to severely undermine *Sarmiento-Rozo*. First, the Court in *Villamonte-Marquez* acknowledged that

No. 18-50828

*Sarmiento-Rozo* provided some support for the defendants' argument, but nonetheless rejected that argument. 462 U.S. at 581 n.2. Second, the *Villamonte-Marquez* Court relied on the possibility of the defendants being extradited to the United States or returning to the United States to reach its conclusion that a live controversy existed in that case.[2] This reasoning would have applied equally to the facts of *Sarmiento-Rozo*: similarly there, the Colombian defendants could have returned to the United States following deportation.

Pedroza-Rocha seeks to distinguish his case and *Sarmiento-Rozo* from *Villamonte-Marquez* by arguing that the former two cases involve an indictment, while the latter involved a conviction. We do not see this as a distinction with a difference. In either case, the Government suffers a concrete injury when the court refuses to intervene. If in this case, for example, the court dismisses this appeal as moot and Pedroza-Rocha returns, the Government will be required to once again present evidence to a grand jury and procure another indictment. This will require the expenditure of time and resources by the Government. Such an injury, whatever its likelihood, is sufficient under *Villamonte-Marquez* to create a live controversy despite defendant's deportation. *Cf. United States v. Suleiman*, 208 F.3d 32, 38 (2d Cir. 2000) ("Though arguably speculative, the possibilities of extradition or re-entry into the United States are precisely the kind of circumstances recognized in *Villamonte–Marquez* . . . as preventing deportation from mooting a Government criminal appeal seeking an enhanced sentence."). Accordingly, *Villamonte-Marquez* dictates that a live controversy persists in this case.

---

[2] Pedroza-Rocha points out that Mexico's extradition treaty with the United States makes it unlikely that he will be extradited from Mexico. Whatever the merits of that argument, it cannot be disputed that, given his history, Pedroza-Rocha may return to the United States for a sixth time.

6

No. 18-50828

At oral argument, counsel for Pedroza-Rocha contended that *Spencer v. Kemna*, 523 U.S. 1 (1998), requires this court to dismiss this case as moot, the above authorities notwithstanding. In that case, a habeas petitioner sought to challenge the revocation of his parole, even though he had been released from prison. *Id.* at 8. Arguing that a live controversy existed, Spencer noted that the revocation of his parole might be used to increase his sentence in a future criminal proceeding. *Id.* at 15. The Court rejected this argument, citing the established principle that mootness cannot be avoided by "general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). Pedroza-Rocha seizes on this language, arguing that a controversy in this case cannot be premised on the assumption that he will violate the law by reentering the country. This reads *Spencer* too broadly. In *Spencer*, as well as the cases it relied upon, the party challenging governmental action sought to premise jurisdiction on the possibility that the challenger might violate the law. Here, by contrast, the Government seeks to premise jurisdiction on the possibility that *someone else* may violate the law. As the Ninth Circuit has noted in rejecting this same argument on analogous facts, the Government in this case "is not seeking to benefit from future criminal behavior it can prevent." *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1063 (9th Cir. 2004). Instead, the Government "has no control over whether [Pedroza-Rocha] will choose to violate the laws of this country by reentry." *Id.* This distinction takes the case before us out of the principle of *Spencer* and leaves it squarely within the ambit of *Villamonte-Marquez*. This case is not moot.

**B.**

Turning to the merits, the Government argues that the district court erred in concluding that the lack of a date and time on Pedroza-Rocha's 2003

NTA deprived the IJ of jurisdiction in the 2003 removal proceeding. This court reviews the district court's ruling on a motion to dismiss an indictment de novo. *United States v. Kay*, 513 F.3d 432, 440 (5th Cir. 2007).

The initiation of removal proceedings under the Immigration and Nationality Act is governed by 8 U.S.C. § 1229. In relevant part, the statute provides that in such proceedings "written notice (in this section referred to as a 'notice to appear') shall be given in person to the alien." *Id.* § 1229(a)(1). An NTA must include, inter alia, "[t]he time and place at which the proceedings will be held." § 1229(a)(1)(G)(i). Title 8 of the Code of Federal Regulations, § 1003.14, entitled "Jurisdiction and commencement of proceedings,"[3] provides that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the [Immigration and Naturalization] Service." *Id.* § 1003.14(a). "Charging document," in turn, "means the written instrument which initiates a proceeding before an Immigration Judge" and includes "a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." *Id.* § 1003.13.

The statutory and regulatory requirements for a valid NTA in immigration proceedings differ from one another. As discussed, 8 U.S.C. § 1229 requires that NTAs include, inter alia, the time and place of a hearing. By contrast, the regulations, while mimicking several of the statutory requirements, do not mandate that the time of a hearing be included in an NTA. *See* 8 C.F.R. § 1003.15(b). But the regulations do require that the NTA include such information "where practicable." *Id.* § 1003.18(b). In that same provision, the following sentence states, "If that information is not contained

---

[3] As explained below, our recent decision in *Pierre-Paul* held that, despite its title, § 1003.14 does not set forth the prerequisites for an IJ's jurisdiction. --- F.3d --- 2019 WL 3229150 at *6 (5th Cir. July 18, 2019).

in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." *Id.*

The Supreme Court addressed the statutory requirement that an NTA include date-and-time information in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). *Pereira* concerned the so-called stop-time rule under the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"). *Id.* at 2109-10. Under IIRIRA, the Attorney General has discretion to cancel the removal of certain nonpermanent residents, so long as they meet certain criteria. 8 U.S.C. § 1229b(b)(1). The criterion at issue in *Pereira* was the requirement that "the noncitizen must have 'been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [an] application' for cancellation of removal.'" *Pereira*, 138 S. Ct. at 2110 (alteration in original) (quoting § 1229b(b)(1)(A)). Under the stop-time rule, that period ends "when the alien is served a notice to appear under section 1229(a) of this title." *Id.* (quoting § 1229b(d)(1)(A)). At issue before the Supreme Court was whether the Government's service of an NTA to Pereira stopped his period of continuous presence. *Id.* at 2113-14. As in this case, the Government failed to include the time and date of the removal proceedings in the NTA provided to Pereira, instead stating that both were "to be set." *Id.* at 2112.

The Supreme Court agreed with Pereira that the service of an NTA that lacked the information required under § 1229(a) did not stop the clock on his period of continued presence. The Court determined that the "statutory text alone [was] enough to resolve" that question. *Id.* at 2114. Looking to the stop-time rule's cross-reference to § 1229(a), the court found that "the statute specifies where to look to find out what 'notice to appear' means." *Id.* Because § 1229(a) requires that time-and-place information be included on an NTA, the

No. 18-50828

Court concluded that to trigger the stop-time rule, the Government must serve an NTA that, "at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." *Id.* (alteration in original). Thus, the Court concluded that the invalid NTA could not halt Pereira's period of continuous presence for purposes of the stop-time rule. *Id.* at 2113-14.

The district court's dismissal of the indictment below was based on its understanding that (1) for an IJ to have jurisdiction, the Government must have served the noncitizen with a valid NTA, as outlined in 8 C.F.R. §§ 1003.13 and 1003.14, and (2) under *Pereira*, for an NTA to be "valid," it must list a date and time. While this appeal was pending, this court issued an opinion addressing this precise argument in *Pierre-Paul v. Barr*, ---F.3d---, 2019 WL 3229150 (5th Cir. July 18, 2019). The posture of *Pierre-Paul* is different from the case at bar, but the central legal issue is the same. *Pierre-Paul* was an appeal from a Board of Immigration Appeals decision affirming an IJ's order of deportation. *Id.* at *3. Pierre-Paul challenged his deportation order arguing, inter alia, that the IJ lacked jurisdiction because the NTA in his case failed to include a date and time. *Id.* at *1-2. We rejected Pierre-Paul's argument for "three independent reasons."[4]

> First, Pierre-Paul's notice to appear was not defective. Second, assuming *arguendo* that the notice to appear were defective, the immigration court cured the defect by subsequently sending a notice of hearing that included the time and date of the hearing. Third, assuming *arguendo* that the notice to appear were defective and the defect could not be cured, 8 C.F.R. § 1003.14 is not jurisdictional.

*Id.* at *3.

---

[4] As this court noted in *Pierre-Paul*, "alternative holdings are binding and not *obiter dictum*." 2019 WL 3229150 at *3 n.2.

No. 18-50828

Each of *Pierre-Paul*'s three alternative holdings renders the district court's ruling in this case untenable. First, the *Pierre-Paul* court found that the NTA in that case was not defective under *Pereira*, despite its failure to include date-and-time information. *Id.* at \*3-4. Since the district court here found the NTA wanting because of its failure to include a date and time, its decision was in error under *Pierre-Paul*. Second, the *Pierre-Paul* court held that the subsequent serving of a notice of hearing that includes a date and time cured any defect that might have existed in the NTA. *Id.* at \*4-5. Here, Pedroza-Rocha was similarly served with a subsequent notice of hearing that did include a date and time. Thus, under *Pierre-Paul*, any alleged defect was cured by the later service of a notice of hearing. Finally, the *Pierre-Paul* court held that § 1003.14 was not jurisdictional. *Id.* at \*5-6. Pedroza-Rocha's argument on appeal—like the district court's holding below—relies on the premise that § 1003.14 sets forth jurisdictional requirements. Otherwise, the failure to serve a valid NTA would amount to a ministerial, rather than jurisdictional, defect, and the error could be waived where, as here, the alien fails to raise it in the underlying proceeding. As a result, *Pierre-Paul*'s third alternative holding that § 1003.14 is not jurisdictional forecloses Pedroza-Rocha's jurisdictional argument as well. Accordingly, following *Pierre-Paul*, we conclude that the IJ in Pedroza-Rocha's 2003 removal proceeding did not lack jurisdiction as a result of the Government's failure to include a date and time on Pedroza-Rocha's NTA. The district court therefore erred in dismissing the indictment and its judgment must be reversed.

## C.

We also hold that the district court should have denied the motion to dismiss the indictment because 8 U.S.C. § 1326(d) bars Pedroza-Rocha's collateral attack on the validity of his removal order. *See Pierre-Paul*, 2019 WL 3229150, at \*3 n.2 ("In this circuit, alternative holdings are binding and not

*obiter dictum*."). As we explained in *United States v. Parrales-Guzman*, 922 F.3d 706 (5th Cir. 2019), an alien seeking to collaterally attack the underlying removal order in a later reentry prosecution must show, inter alia, that he "exhausted any administrative remedies that may have been available to seek relief against the order." *Id.* at 707 (quoting 8 U.S.C. § 1326(d)(1)). We then held that Parrales-Guzman's collateral attack failed because he did not exhaust all available administrative remedies by appealing or reopening the removal order. *Id.*

Pedroza-Rocha argues that § 1326(d) poses no bar in this case because the 2003 Removal Order was void ab initio, asserting once again that the IJ who issued the order lacked jurisdiction. We rejected substantially the same argument in *Parrales-Guzman*. In that case, Parrales-Guzman argued that "§ 1326(d)'s bar on collateral attacks does not attach because [the] removal order was *void ab initio* as it rested on an unconstitutionally vague statute." *Id.* We disagreed, writing that such an argument "upends Congress's mandate that collateral review in the course of re-entry prosecutions be available only in a narrow set of circumstances." *Id.*; *see also Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. . . . But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to.").

Despite having been advised of his right to appeal by the IJ, Pedroza-Rocha did not file an appeal with the Board of Immigration Appeals. Having failed to exhaust all administrative remedies, Pedroza-Rocha is thus barred under 8 U.S.C. § 1326(d)(1) from collaterally attacking his removal order. *Parrales-Guzman*, 922 F.3d at 707. For this additional reason, the district court erred in granting Pedroza-Rocha's motion to dismiss the indictment.

No. 18-50828

## III.

For the reasons set forth above, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.