# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 23, 2025

Lyle W. Cayce
Clerk

No. 24-30199

—————————

New Orleans City,

*Plaintiff—Appellant*,

*versus*

Aspect Energy, L.L.C.; Chevron USA, Incorporated;
Entergy New Orleans, L.L.C.; ExxonMobil Pipeline
Company; Gulf South Pipeline Company, L.P.; Southern
Natural Gas Company, L.L.C.,

*Defendants—Appellees*.

—————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-8290

—————————————————————

Before Smith, Stewart, and Duncan, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

Appellant, New Orleans City (the "City"), alleges that Appellees, several pipeline operators (the "Operators"), and Entergy New Orleans LLC ("Entergy") have engaged in oil and gas production and transportation activities that have caused damage to the City's coastal zone. The City argues that Entergy has allowed its pipeline canals to widen and erode to a point that they now threaten the City's storm buffer. The City sued the Operators and

No. 24-30199

Entergy in state court asserting claims under Louisiana's State and Local Coastal Resources Management Act of 1978 ("SLCRMA"). The Operators removed the suit to federal court on the basis of diversity jurisdiction, arguing that Entergy—the only in-state defendant—was improperly joined. Entergy consented to removal. The City moved to remand. The district court denied that motion, dismissed Entergy as a party, entered a final judgment, and stayed the case pending appeal. For the reasons stated below, we AFFIRM the district court's judgment.

## I.

### A. Statutory Background

This case is one of over forty lawsuits filed in Louisiana state courts by costal parishes alleging SLCRMA violations by oil and gas companies.[1] The parishes allege that the companies have violated SLCRMA by failing to obtain necessary coastal use permits or by violating the terms of the permits that they obtained.

SLCRMA took effect in 1980 and generally prohibits parties from "commenc[ing]" a "use" of the Louisiana coastal zone "without first applying for and receiving a coastal use permit." *See* La. R.S. § 49:214.30(A)(1). "Use" is defined as "any use or activity within the coastal zone which has a direct and significant impact on coastal waters." *Id.* § 49:214.23(13). SLCRMA creates a cause of action against parties that violate or fail to obtain the requisite coastal use permit. *Id.* § 49:214.36(D)–(E). Critically, however, the statute provides several exceptions including that "[i]ndividual specific uses legally commenced or established prior to the effective date of the coastal use permit program shall

---

[1] In other suits by coastal parishes, the named plaintiffs were the particular parish and the State of Louisiana. Here, however, only the City is a named plaintiff.

not require a coastal use permit." *Id.* § 49:214.34(C)(2). This is referred to as SLCRMA's "Historical-Use Exception."

Under SLCRMA, Louisiana developed the Louisiana Coastal Resources Program (the "Program"), which established the State's coastal use permit program. Like SLCRMA's Historical-Use Exception, the Program's "Rules and Procedures for Coastal Use Permits" contain a "Blanket Exemption" providing that "[n]o use or activity shall require a coastal use permit if . . . the use or activity was lawfully commenced or established prior to the implementation of the coastal use permit process. . . ."[2] 43 LA. ADMIN. CODE Pt. I, § 723(B)(8)(a).

### B. Procedural History

The City sued the Operators and Entergy in the Civil District Court for the Parish of Orleans alleging that they violated SLCRMA in their oil-and-gas exploration, production, and transportation activities within the Orleans Parish coastal zone. The City sued, "exercis[ing] the authority of the Parish of Orleans . . . under [SLCRMA]," to seek injunctive, declaratory, and damages relief against the Operators and Entergy.

The Operators are citizens of various states outside of Louisiana. Entergy is the sole in-state defendant. Entergy provides natural gas utility services to its customers in New Orleans and owns three natural gas pipelines that have segments within the boundaries of Orleans Parish. Entergy acquired or constructed its pipelines prior to SLCRMA's effective date in 1980. The City argues that Entergy's "ongoing negligence" has magnified

---

[2] When using the term "Historical-Use Exception," we refer specifically to the exception within SLCRMA. When using the term "Blanket Exemption," we refer to the exemption within the Program's Rules and Procedures for Coastal Use Permits.

the impacts of its canals and has critically reduced buffer areas needed for storm protection.

The Operators removed the suit to federal court, asserting federal jurisdiction was available to them under 28 U.S.C. §§ 1331, 1332, 1333, 1367, 1441 and 1442, and 43 U.S.C. § 1349. Entergy filed a supplemental brief consenting to removal, arguing, *inter alia*, that it is excepted from SLCRMA's permit requirements because its use of the coastal zone was commenced before the statute's effective date. It argued that it was therefore improperly joined and that there is complete diversity of citizenship among the properly joined parties.

The City filed a motion to remand the case to state court. The district court denied the City's motion, only reaching the issue of diversity jurisdiction. The district court held that there was no reasonable basis to predict that the City might be able to recover on its claims against Entergy because the City alleged no conduct by Entergy that was not lawfully commenced prior to SLCRMA's effective date. Thus, the district court held that it could disregard the Louisiana citizenship of Entergy, the only in-state defendant in the case, and assert diversity jurisdiction. The City moved for reconsideration. The district court denied the motion for reconsideration, entered final judgment of its ruling, and stayed the case pending appeal. The City timely appealed.

## II.

On appeal, the City raises two arguments. First, it argues that Entergy was properly joined in this suit because there is a reasonable basis to predict that it can recover against Entergy. Thus, the City argues, there is no complete diversity among the parties and the district court erred in denying its motion for remand. Second, the City argues that it is merely a nominal

party representing Louisiana and that the state's presence in this suit defeats diversity. We address each argument in turn.

We review a district court's denial of a motion to remand and the determination that a party is improperly joined *de novo. D & J Invs. of Cenla v. Baker Hughes a G E Co.*, 52 F.4th 187, 195 (5th Cir. 2022). If a party is improperly joined, a court may disregard that party's citizenship for purposes of determining subject matter jurisdiction. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) (citation omitted); *see also Int'l Energy Ventures Mgmt. v. United Energy Grp.*, 818 F.3d 193, 199 (5th Cir. 2016) ("A defendant is improperly joined if the moving party establishes that . . . the plaintiff has not stated a claim against a defendant that he properly alleges is non[-]diverse." (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)) (emphasis omitted)). In deciding improper joinder, we must "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff [and remand]." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (citing *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005)). "[T]he existence of even a single valid cause of action against in-state defendants . . . requires remand of the entire case to state court." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

## III.

The City argues that the district court erred in concluding that there is no reasonable basis for predicting that it may recover against Entergy. We disagree.

As discussed, SLCRMA's Historical-Use Exception provides that "uses legally commenced or established prior to the effective date of the coastal use permit program shall not require a coastal use permit." *See* LA. R.S. § 49:214.34(C)(2). It is uncontested that Entergy acquired or

constructed its pipeline canals before SLCRMA's effective date in 1980. Thus, Entergy is excepted from the statute's permitting requirements and the City has no claim against it. Because the City's only claim against Entergy is doomed, Entergy was improperly joined in this suit, and the district court was correct to disregard its citizenship. *See Allen,* 907 F.3d at 183; *United Energy Grp.*, 818 F.3d at 199. With Entergy's citizenship disregarded, there is complete diversity among the parties, and this case may proceed in federal court.[3] 28 U.S.C. § 1332; *see Gasch*, 491 F.3d at 281 ("Under 28 U.S.C. § 1441(a), any state court civil action over which the federal courts would have original jurisdiction may be removed from state to federal court.").

The City attempts to avoid this conclusion by arguing that there is an exception to the Historical-Use Exception. It avers that Entergy's pipeline canal has "experienced continuous change via erosion since its installation." The City attributes this erosion and canal widening to Entergy's "extreme negligence." The City further contends that this negligence has led to a "significant change" in Entergy's use of the coastal zone which occurred prior to the date of the coastal use permit program, thereby rendering its use nonexempt and violative of SLCRMA. The City's exception-to-the-exception theory stems not from SLCRMA, nor the Program, but instead from an environmental impact statement.

The City argues that the Final Environmental Impact Statement ("FEIS")[4] developed during the Program's federal regulatory approval

---

[3] The parties do not dispute that the amount in controversy exceeds $75,000.

[4] In 1972, Congress enacted the Coastal Zone Management Act ("CZMA") which provides federal grants to states with their own coastal zone management programs, so long as those programs have been approved by the Secretary of Commerce. 16 U.S.C. §§ 1451, 1454. In approving state coastal zone management programs for federal funding, federal agencies must comply with the National Environmental Policy Act ("NEPA"). NEPA imposes procedural requirements on public agencies to ensure that they consider "the

process created a carve out to the Historical-Use Exception. The FEIS states that a "use" does not fall under the Program's Blanket Exemption if a "significant change in the nature, size, location or impacts of the use or activity" has taken place prior to the date of the coastal use permit program. The City contends that the expansion and erosion of Entergy's pipelines constitutes a "significant change" as defined in the FEIS. But even assuming that is true, the City's reliance on the FEIS is misguided because it is not substantive law.

The FEIS was jointly developed by the National Oceanic and Atmospheric Administration ("NOAA") and the Louisiana Department of Natural Resources ("LDNR") as part of the federal regulatory approval and funding process for the Program. Critically, the statute that required the FEIS to be created, NEPA, is merely a "procedural statute." *See Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 676 (5th Cir. 1992). Environmental impact statements created under NEPA, like the FEIS, do not impose substantive environmental obligations on agencies or third parties. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 353 n.16 (1989) ("NEPA imposes no substantive requirement that mitigation measures actually be taken."). While the FEIS was part of the Program's federal regulatory approval process, it does not displace the unambiguous text of SLCRMA.

Nor does the FEIS guide our understanding of SLCRMA. The City argues that the FEIS provides a "gloss" as to how SLCRMA's

_____

environmental impact of their proposals and actions." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 757 (2004) (citing 42 U.S.C. § 4332). One such requirement is that federal agencies must provide a "detailed statement" on proposals for major federal actions significantly affecting the quality of the human environment. 42 U.S.C. § 4332(2)(C). Here, that detailed statement is the FEIS.

Historical-Use Exception should be interpreted. It does not. As a preliminary matter, the FEIS was not created or enacted by the Louisiana legislature and thus it says nothing about the intent of the SLCRMA's framers. Additionally, the FEIS was prepared only as part of a federal regulatory process for the Program, not as part of the enactment of SLCRMA. As a result, the notion that the FEIS represents the LDNR's view on the scope of SLCRMA's Historical-Use Exception is dubious. Even if it did, under Louisiana law an agency is "not entitled to deference in its interpretation of statutes." *Bowers v. Firefighters' Ret. Sys.*, 6 So. 3d 173, 176 (La. 2009); *accord Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 396 (2024) (holding similarly for federal agencies under federal law). Thus, the district court did not err when it concluded that the FEIS does not control its analysis.[5]

Separately, the City argues that the district court erred in its application and reliance on the doctrine of contemporaneous construction in denying the City's motion for remand. That argument, too, is meritless.

Under the doctrine of contemporaneous construction, "great weight in the judicial interpretation [of a statute] should be given to the construction consistently given . . . by those charged with applying it administratively

_____

[5] The City also argues that the district court should have adhered to a Louisiana state trial court ruling in interpreting SLCRMA: *Parish of Cameron v. Auster Oil and Gas, et al.* ["*Cameron Parish*"], Case No. 10-195 (38th J.D.C., Cameron Parish, Sept. 11, 2023). In *Cameron Parish*, the judge ruled—orally, from the bench, and without analysis—that FEIS guidance should be taken into consideration when interpreting the scope of SLCRMA's Historical-Use Exception. *See id.* But that ruling is unpersuasive. Indeed, there was no analysis to have been persuaded by, and even if the trial court had explained that ruling, it still could not preclude Entergy's dismissal. To be sure, we have held that a resident defendant cannot be dismissed as improperly joined where "at least one Louisiana appellate case" has held that a defendant could be liable under similar circumstances. *See D & J Invs. of Cenla*, 52 F.4th at 196. But an unexplained oral trial court ruling cannot by itself demonstrate that there is a reasonable basis to predict that the City can recover against Entergy under SLCRMA.

*Roberts v. City of Baton Rouge*, 108 So. 2d 111, 124 (La. 1958). The City argues that the district court invoked the doctrine when it credited evidence produced by the Operators which showed that the LDNR has disclaimed regulatory authority over certain pre-SLCRMA activities. It further argues that the district court's reliance on evidence of the LDNR's contemporaneous interpretation of the Program signals that SLCRMA is ambiguous because Louisiana's doctrine of contemporaneous construction applies only when a statute is ambiguous on its face. *See id.* This ambiguity, the City contends, weighs against federal court jurisdiction, not in favor of it. But that argument contorts the district court's reasoning.

The district court relied on the text of SLCRMA to interpret the scope of the Historical-Use Exception. Indeed, it explained that "[t]he plain texts of the SLCRMA and the [Program] both state explicitly, and without exception or caveat, that activities legally commenced prior to the effective date of the coastal use permit program *shall not* require a coastal use permit." The district court then acknowledged that when the meaning of the plain text is clear, that interpretation must be adopted without further inquiry. The district court only discussed the doctrine of contemporaneous construction in a single paragraph as providing "further evidence[]" in support of its plain text analysis. Thus, the City's argument that the district court "relied" on the doctrine is unavailing.

At bottom, the City does not allege any action or "use" by Entergy that has contributed to the damage of the City's storm buffer. *See* La. R.S. § 49:214.23(13). Instead, the core of the City's argument is that Entergy *should have acted* to prevent the widening and erosion of its canals. While it might be prudent policy to require coastal pipeline operators to monitor and maintain their decades-old canals, that policy is not found in SLCRMA. Instead, the text of SLCRMA provides that "uses legally commenced or established prior to the effective date of the coastal use permit program shall

not require a coastal use permit." LA. R.S. § 49:214.34(C)(2). "[W]hen the meaning of the statute's terms is plain, our job is at an end." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 674 (2020).

Because Entergy constructed or purchased its pipeline canals before SLCRMA's effective date in 1980, and because Entergy has done nothing since then that constitutes a "use" under the statute, there is no reasonable basis to predict that the City can recover on its claims against Entergy. *See* LA. R.S. § 49:214.23(13). Thus, the district court did not err in disregarding the citizenship of Entergy, holding that it has diversity jurisdiction over the properly joined defendants, and denying the City's motion for remand.

## IV.

The City alternatively asserts that it is merely a nominal party representing Louisiana and that the state's presence in this suit defeats diversity. We disagree.

It is "well established that a state is not a 'citizen' for purposes of diversity jurisdiction" such that its joinder in an action will destroy diversity. *See Tradigrain, Inc. v. Miss. State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983). This is true even when the nominal party is an agent of the state instead of the state itself. *See Robertson v. Wolf River Lumber Co.*, 269 F. 606, 607 (5th Cir. 1921). The citizenship of the real parties in interest is determinative of diversity jurisdiction. *See Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980); *Nunn v. Feltinton*, 294 F.2d 450, 453 (5th Cir. 1961)). The "real party in interest" is the party "entitled under the substantive law to enforce the right sued upon and . . . generally . . . benefits from the action's final outcome." *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 935 (2009) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004) (defining a "real party in interest")); *see also In re Davis*, 194 F.3d 570, 578 (5th Cir. 1999) (holding that

"an entity is the real party in interest when it is statutorily authorized to bring suit to enforce a claim").

The City did not argue that Louisiana was the real party in interest before the district court or in its principal brief before this court. However, after a group of seven parishes (the "Parishes") filed an amicus brief in this case raising that argument, the City "adopt[ed]" the argument in its reply brief. The Parishes argue that in the forty other similar coastal cases filed in the state, the named plaintiffs were the particular parish and the State of Louisiana. They assert that here, however, the City "[i]nexplicably" failed to name the State of Louisiana as a plaintiff.[6] Still, the Parishes contend that the City is merely a nominal party filing this suit on behalf of Louisiana.

The Parishes, and by adoption the City, ground their argument in the fact that SLCRMA divides "uses" into uses of state concern and uses of local concern—with the State authorized to issue permits for uses of state concern and parishes authorized to issue permits for uses of local concern. Entergy's pipeline, the Parishes contend, is a "use of state concern." Because they believe the City sued on issues of state concern, they argue that Louisiana is the real party in interest to this suit. The Parishes rely on a district court opinion which stated that "[w]hen the Parish sues on issues of State concern, it does sue on behalf of the State regardless of whether the State is actually a named party to the litigation because the suit is to enforce the State's substantive rights." *Par. of Plaquemines v. Total Petrochemical & Ref. USA, Inc.*, 64 F. Supp. 3d 872, 892 (E.D. La. 2014) (emphasis omitted).

---

[6] In adopting this argument as its own, the City fails to explain why it neglected to name Louisiana as a plaintiff.

Thus, they argue that Louisiana is a party to this suit, defeating diversity jurisdiction and requiring remand to the state court. We disagree.

As a preliminary matter, we acknowledge that the City did not forfeit its argument that this court lacks jurisdiction. This court does not ordinarily consider an issue raised for the first time on appeal. *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc.*, 200 F.3d 307, 316–17 (5th Cir. 2000). This is particularly true where, as here, that issue is first raised in an amicus brief, *see Anderson v. City of New Orleans*, 38 F.4th 472, 481 (5th Cir. 2022), or in a reply brief, *see United States v. Rodriguez*, 602 F.3d 346, 360 (5th Cir. 2010). But this issue concerns the jurisdiction of this court. If Louisiana is a party to this case, then diversity jurisdiction is destroyed. *See Tradigrain, Inc.*, 701 F.2d at 1132 "This court has a continuing obligation to assure itself of its own jurisdiction." *United States v. Pedroza-Rocha*, 933 F.3d 490, 493 (5th Cir. 2019). Thus, we proceed to evaluate whether Louisiana is a party to this suit. We conclude that it is not.

The City asks this court to hold that SLCRMA authorizes parishes to file suit to enforce uses of state concern. We decline to reach that issue because, even if it does, it is not clear that the City exercised that purported authorization in this case. Further, the City's reliance on *Total Petrochemical* is misplaced. 64 F. Supp. 3d at 887. The district court in that case categorized its conclusion as dicta when it acknowledged that its ruling on a separate issue "renders moot the question [of] whether the claims on behalf of the State destroy diversity jurisdiction." *Id.*

Moreover, the City's argument is foreclosed by Supreme Court precedent. In *Lincoln Property Co. v. Roche*, two citizens of Virginia sued multiple diverse defendants in state court. 546 U.S. 81, 84 (2005). The defendants removed the case to a federal district court and obtained summary judgment. *Id.* Before final judgment was entered, the plaintiffs moved to

remand the case back to state court, arguing that one of the defendants was discovered to be nondiverse. *Id.* at 87. The district court denied the motion for remand. *Id.* On appeal, the Fourth Circuit reversed, holding that removal was improper because one defendant failed to show the nonexistence of a nondiverse entity that was its "real party in interest." *Id.* at 84. The Supreme Court reversed the Fourth Circuit's decision and held that:

> Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State. It is not incumbent on the named defendants to negate the existence of a potential defendant whose presence in the action would destroy diversity.

*Id.* As in *Lincoln*, where there was complete diversity of citizenship between the named plaintiffs and all of the named defendants, so too here is there diversity among all of the named parties once Entergy's citizenship is disregarded. *See id.* And just as it was not incumbent on the *Lincoln* defendants to negate the existence of a potential defendant whose presence in that action would destroy diversity, it is not incumbent on the Operators here to negate the existence of a potential party—Louisiana—whose presence could defeat diversity. *Id.*[7]

The Court's holding in *Lincoln* accords with the basic principle that plaintiffs are "masters of their complaint." *Id.* at 94. In this case, the City chose to file this suit on its own behalf. Indeed, the City filed this suit

---

[7] To be sure, *Lincoln* concerned potential defendants, whereas this case concerns a potential plaintiff. *See* 546 U.S. at 84. And the City attempts to further distinguish the case on the basis that it involved private individual plaintiffs suing in tort. Nonetheless, *Lincoln*'s general principle stands that "[d]efendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Id.* That is true here.

expressly "exercis[ing] the authority of the Parish of Orleans . . . under [SLCRMA]." As discussed, in approximately forty other suits filed by coastal parishes alleging that oil-and-gas companies violated SLCRMA, the plaintiffs were the parish and the State of Louisiana. The City listed only itself as a plaintiff despite dozens of examples of similar suits by parishes that included Louisiana as a plaintiff as well.[8] Because the City filed this suit on its own behalf under SLCRMA, and because the City stands to benefit from a favorable ruling, the district court did not err in considering the City to be the sole party in interest. *See United States ex rel. Eisenstein*, 556 U.S. at 935 (2009); *In re Davis*, 194 F.3d at 578. For these reasons, we hold that Louisiana is not a party to this suit nor is the City merely a nominal party representing Louisiana.

\* \* \*

In sum, the district court did not err in disregarding the citizenship of Entergy because there is no reasonable basis to predict that the City can recover against Entergy. Further, because the City filed this suit on its own behalf, Louisiana is not a party to this case. Thus, there is complete diversity of citizenship among the properly joined parties, and the district court did not err in denying the City's motion to remand.

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[8] *See, e.g.*, *Total Petrochemical*, 64 F. Supp. 3d at 877–78 (acknowledging that "[t]he Parish of Plaquemines filed suit on its own behalf and on behalf of the State of Louisiana").