904 So.2d 31 (2005)
Dwayne GATLIN
v.
ENTERGY CORPORATION.
Dwayne Gatlin
v.
Entergy Corporation.
Nos. 2004-CA-0034, 2004-CA-1368.
Court of Appeal of Louisiana, Fourth Circuit.
May 4, 2005.
*32 Christopher J. Bruno, Stephanie M. Bruno, Bruno & Bruno, New Orleans, LA, for Plaintiff/Appellee.
Emile A. Bagneris, III, Ginger K. DeForest, Ungarino & Eckert L.L.C., Metairie, LA, for Appellee.
Kenneth P. Carter, Louis Leonard Galvis, Margaret Jenkins Savoye, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JAMES F. McKAY III, Judge MAX N. TOBIAS JR., Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.

FACTS AND PROCEDURAL HISTORY
On January 9, 1999, plaintiff Dwayne Gatlin was involved in an accident while working in the course and scope of his employment with Cox Communications Louisiana, Inc. ("Cox") on an Entergy Louisiana, Inc. ("ELI") utility pole that allegedly cracked and fell. Gatlin, on behalf of Cox, was responding to a cable television service call at the residence of Robin Perrin. Gatlin climbed a ladder to perform work on the pole. While he was on the ladder, the pole cracked and fell, and Gatlin's ladder also fell, causing Gatlin to strike the ground. Gatlin allegedly sustained injury as a result of the accident.
This case proceeded to a bifurcated trial. In Phase One, the plaintiff's claims against ELI were tried before a jury. Prior to the commencement of the jury trial, the trial court ruled that no testimony would be allowed with respect to the fault of plaintiff's employer, Cox.[1] During the course of the trial, the district court also ruled that ELI would not be allowed to present evidence of the plaintiff's OSHA (Occupational Safety and Health Act) violations. The jury awarded $200,000.00 in damages to plaintiff and apportioned thirty percent of *33 the fault to the plaintiff and seventy percent of the fault to ELI.
Next, a bench trial of ELI's third-party contractual indemnity demands against Cox and National Union Fire Insurance Company of Pittsburg, PA ("National Union") was held. The trial court dismissed ELI's third-party indemnity claims against Cox and National Union, finding that ELI was not entitled to indemnity. ELI appealed both judgments in this matter. These two appeals were subsequently consolidated.

DISCUSSION
ELI avers that the trial court erred in denying it the opportunity to introduce evidence of the negligence and fault of the plaintiff's employer, Cox, at the trial of this matter, in contravention of Louisiana Civil Code article 2323.
In oral reasons, the trial court noted:
There's a third-party demand filed by Entergy against Cox Cable that sounds in contract. I severed that demand ... It's to be a bench trial anyway with respect to the contractual demand. Likewise, in connection with that, I'm not allowing any testimony with respect to [Cox's] fault to be put on during the plaintiff's case in chief ... I don't think it is appropriate, and even in light of Article 2323 ... that putting on fault of a statutorily immune party in connection with this case will do anything further to serve the ends of justice, particularly when the third-party demand specifically pleads that all acts whatever with respect to ... Entergy [are] to be indemnified by Cox.
* * *
[I]n the pleading, the third-party demand, it appears your allegation in paragraph 8 that Cox was to provide Entergy with liability insurance ... for acts just as this. So negligence on the part of Cox would be insignificant in that respect.
* * *
My ruling is ... that it is impermissible to allow employer fault to be brought before the jury and put on the jury interrogatory forms because of the statutory immunity afforded to the employers. However, it is permissible for defendant Entergy to ask any questions with regard to plaintiff fault/employee fault.
... [I]t's my appreciation that essentially the exclusive issue is whether or not Mr. Gatlin sounded the telephone pole with some type of instrument prior to climbing the pole. And you are more than welcome to ask him questions in connection with that to address whether there is any comparative fault on his fault ... [b]ut to try to establish a negligence case against his employer, who is statutorily immune from any theory of negligence on the part of its employees, would in effect represent a double deduction and essentially a denial from due process on the part of the plaintiff in trying his case.
Appellee Gatlin argues that the cause of his injury had nothing to do with any actions or inactions on the part of Cox, and ELI could not have sustained its burden of proof against Cox on that issue. Gatlin further asserts that ELI's third-party action for indemnification and defense against Cox rendered the entire issue of Cox's negligence irrelevant in the main action.
Louisiana Civil Code Article 2323 states in part:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, *34 death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
Under the clear and unambiguous language of this article, ELI was entitled to present evidence of the negligence and fault of plaintiff's employer, Cox, to the jury in this trial.
In Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism, XXXX-XXXX (La.10/15/02), 828 So.2d 530, the Louisiana Supreme Court, in upholding the right of the State of Louisiana to present, as an affirmative defense, evidence relating to the fault of a third party, held that Louisiana Civil Code Article 2323 "clearly requires that the fault of every person responsible for a plaintiff's injuries be compared, whether or not they are parties, regardless of the legal theory of liability asserted against each person." Id. at p. 11, 828 So.2d at 537.
Moreover, the Louisiana Supreme Court has specifically held that the right of a jury to determine the degree or percentage of fault of all persons extends to immune persons/parties, including a plaintiff's employer. In Keith v. United States Fidelity & Guaranty Co., 96-2075, pp. 5-7 (La.5/9/97), 694 So.2d 180, 182-84, the Court stated:
Comparing La.Civ.Code art. 2323, as amended, to its predecessor, it is apparent that the basic structure for comparative fault is unchanged. However, we observe that the Legislature added more specific language to Art. 2323 making it mandatory for the determination of the percentage of fault of all persons contributing to an injury, whether those persons are unidentified non-parties, statutorily immune employers, or others.
* * * *
After carefully considering Act 3, we find that the legislative amendment of La.Civ.Code arts. 2323 was procedural legislation. Act 431 of 1979 amended and reenacted La.Civ.Code arts. 2103, 2323, and 2324 to usher a comparative fault system into Louisiana. This act eliminated the doctrine of contributory negligence and provided the framework for a comprehensive scheme of loss apportionment in multi-party litigation. Cole [v. Celotex Corp.], 599 So.2d 1058 [(La.1992)]. Since the adoption of a pure comparative fault system, it has been the task of the factfinder to allocate shares of negligence. Socorro v. City of New Orleans, 579 So.2d 931 (La. 1991).
Viewing the applicability of Act 3 to the case sub judice, it is clear that the substantive right to allocate fault was created in 1979 with the introduction of comparative fault. As such, Act 3 simply delineates a method for enforcing that substantive right as particularly applied to the statutory employer.
Accordingly, we conclude that the legislative changes reflected in Act 3 are procedural, and can be applied retroactively. Thus, we find that employer fault must be quantified in the present case, as indicated in conformity with the amendment to La.Civ.Code art. 2323. *35 Accordingly, we find that the trial court and court of appeal erred in ordering Blaney and USF & G to strike the allegations of employer fault from their answer.
Thus, the Keith court clearly recognized that a defendant has the right to quantify and allocate the fault of all persons causing or contributing to an injured plaintiff's damages, including the fault of an injured plaintiff's employer, which would be immune from a claim against it for damages in the absence of an intentional tort.
In the instant case, ELI specifically pled the fault of third parties as a cause of the plaintiff's accident and injuries as an affirmative defense in its Answer to plaintiffs' Petition for Damages. Pursuant to Louisiana Civil Code Article 2323 and the Louisiana Supreme Court's holdings in Keith and Dumas, ELI was entitled to present evidence of the negligence and fault of Dwayne Gatlin's employer, Cox, at the trial of this matter. Cox's status as Gatlin's employer, immune from any claim by Gatlin for damages, did not prohibit ELI from introducing evidence as to Cox's fault for the accident and injuries sustained by the plaintiff. The trial court erred in depriving ELI the opportunity to present such evidence. As such, we reverse this ruling.
ELI next contends that the trial court erred in denying ELI the right to introduce evidence of Gatlin's violations of OSHA. The trial court reasoned that OSHA regulations do not apply to this case, because they relate to employers' obligations to their employees.
OSHA specifically provides that "Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this chapter which are applicable to his own actions and conduct." 29 U.S.C. § 654(b). As the United States Fifth Circuit Court of Appeals has explained:
OSHA requires that all employees, as well as employers, to comply with safety standards and regulations. But the Act only imposes criminal liability on employers for willfully violating such standards or regulations. While employees have a duty to follow OSHA regulations, Congress has chosen not to criminalize employee abdications of that responsibility.
United States v. Shear, 962 F.2d 488, 492 (5th Cir.1992).
In addition, not only are OSHA regulations applicable to employees, violations of OSHA regulations are relevant to establishing the negligence of a party. See Manchack v. Willamette Industries, Inc., 621 So.2d 649, 652 (La.App. 2 Cir.1993). Louisiana law is clear that "[w]hile statutory violations are not in and of themselves definitive of civil liability, they may be guidelines for the court in determining standards of negligence by which civil liability is determined." Smolinski v. Taulli, 276 So.2d 286, 289 (La.1973).
Appendix D of 29 CFR 1910.269, which contains OSHA's implementing regulations, provides that "[w]hen work is to be performed on a wood pole, it is important to determine the condition of a wood pole," and that "it is essential that an inspection and test of the condition of the pole be performed before it is climbed." The regulation provides that the pole should be inspected for the following: buckling and odd angles; cracks; holes; shell rot and decay; knots; depth of setting; soil conditions; and burn marks. It also provides that the "Hammer Test" and the "Rocking Test" are acceptable methods of testing wood poles.
The trial court's refusal to allow ELI to present testimony and evidence to establish that Gatlin's actions violated relevant OSHA safety provisions unduly and erroneously *36 prejudiced ELI's right to prove fully its alleged defense of the plaintiff's comparative fault. As such, we reverse this ruling.
ELI further argues that the trial court erred in finding it solely at fault for causing plaintiff's injuries, in contravention of the jury's findings and the trial court's own judgment on the jury verdict.
We have remanded this matter for a new trial to allow evidence to be presented regarding Cox's fault and the plaintiff's alleged violations of OSHA. As such, this assignment of error is mooted.
Finally, ELI asserts that the trial court erred in finding that Cox and National Union did not owe it a defense and indemnity as required by the Agreement between ELI and Cox and the insurance policy underwritten by National Union.
In May 1988, ELI and Cox entered into a written Agreement ("the Agreement") pursuant to which Cox was granted by ELI a license to attach cables, wires, and associated appliances to utility poles owned by ELI in certain areas. Paragraph 12 of the Agreement provides in part:
LICENSEE [Cox] shall indemnify, protect and save harmless LICENSOR [ELI] from and against any and all liability, loss, damages, expenses (including attorneys' fees), actions, causes of action, suits, claims or judgments arising from damage to property and/or injury (including death) to any person or persons, including, but not limited to, employees of [Cox] ... which may arise out of or be caused by the erection, maintenance, presence, use or removal of said attachments or by the proximity of the respective cables, wires, apparatus and appliances of Parties hereto, or by any act of LICENSEE on or in the vicinity of LICENSOR'S poles, or other poles whereon LICENSEE maintains facilities, however caused. LICENSEE specifically agrees that any and all liability, claims, demands, losses, damage, expenses or other costs incurred by LICENSOR arising out of or in connection with any unsafe and/or unserviceable condition and/or any violation of the National Electrical Safety Code created by or resulting from any attachment of LICENSEE shall be deemed by the Parties hereto as having been caused solely by the fault or negligence of LICENSEE. It is understood that right of entry is granted upon the express condition that all risks thereasto be assumed by LICENSEE and its employees. LICENSEE shall carry the following insurance coverage, naming LICENSOR and Telephone Company LICENSEES occupying poles covered by this Agreement as additional insureds, to protect the Parties hereto from and against any and all liability, loss, damages, expenses (including attorneys' fees), actions, causes of action, suits, claims or judgments of every kind and nature which may arise or result, directly or indirectly, from or by reason of such loss, injury or damage: (a) Comprehensive General Liability Insurance with a combined single limit of not less than One Million, Five Hundred Thousand Dollars ($1,500,000) for Bodily Injury and Property Damage, such policy to include Contractual Liability Insurance which shall fully protect LICENSOR against all liability assumed by LICENSEE herein, and (b) LICENSEE shall also carry Workers' Compensation Insurance which shall fully provide for benefits required under any Workers' Compensation laws in effect that may be applicable to it. All insurance required shall remain in force for the entire life of this Agreement ... [Emphasis added.]
*37 Pursuant to the foregoing terms of paragraph 12 of the Agreement, Cox obtained a policy of Comprehensive General Liability insurance that was renewed from year to year. In 1999, the year in which Gatlin's accident took place, the insurance in question was underwritten by National Union.
The policy bound National Union, under the Insuring Agreement of Section I, Coverage A, to pay those sums that the "insured" would become legally obligated to pay as damages because of "bodily injury" caused by an "occurrence" that might take place in the coverage territory during the policy period. The Insuring Agreement also bound National Union to defend any suit seeking such damages to which the insurance might apply.
In denying indemnity, Judge Belsome reasoned:
... Entergy files this Third Party demand against Cox Communications Louisiana, Inc. and/or National Union Insurance Company seek[ing] indemnity for the amounts for which it was cast in judgment on plaintiff's claims. Entergy seeks a recovery based on contractual indemnity and/or as an additional insured on the National Union policy.
The Court finds that under neither theory is Entergy entitled to indemnity where the accident was caused by Entergy's sole negligence. Based on the facts of this case, the plainitff's accident was caused by the defective pole and not by any fault of Cox.
The language of the indemnity provision of the Agreement at issue requires Cox to defend ("save harmless") and indemnify ELI for injuries caused as a result of Cox's performance of the license agreement even where the injuries are caused by ELI's own negligence. This conclusion is based on the fact that paragraph 12 of the Agreement requires Cox to defend and indemnify ELI for any injuries arising out of the performance of the Agreement "however caused." As such, we find that the Agreement required Cox to defend and indemnify ELI.
Under the terms of the National Union policy, ELI was both an indemnitee under an insured contract entered into by Cox, since the ELI-Cox Agreement constituted an "insured contract" as defined in the policy, and an additional insured of National Union itself, since ELI was a company to which Cox had obligated itself to obtain liability insurance in ELI's favor. As established by the clear terms of the policy, National Union was obligated to both defend and indemnify ELI in those capacities. It makes no difference in determining National Union's obligation to defend and indemnify ELI that ELI may have been negligent. Under Louisiana law, an additional insured is entitled to coverage as is the named insured. See Citgo Petroleum Corp. v. Yeargin, Inc., 97-1574 (La.App. 3 Cir. 2/19/97), 690 So.2d 154, writs denied, 97-1223, 97-1245 (La.9/19/97), 701 So.2d 169, 170. Thus, we find that it was error for the trial court to determine that Cox and National Union did not owe ELI a defense and indemnity.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is reversed, and this matter is remanded for a new trial, with instructions to the trial court to allow ELI to present evidence regarding Cox's negligence and Gatlin's OSHA violations.
REVERSED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] From this ruling, ELI filed for an Emergency Writ of Supervisory Review. This court declined to exercise supervisory jurisdiction, stating that "[a]pplicant has an adequate remedy on appeal."