# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2022

Lyle W. Cayce
Clerk

No. 21-30523

D & J Investments of Cenla, L.L.C.; Deborah H. Greer;
James W. Greer, Jr.; Daniel L. Webb; Jim Adams, et al,

*Plaintiffs—Appellants*,

*versus*

Baker Hughes a G E Company, L.L.C.; Baker Hughes
Energy Services, L.L.C.; Dresser, L.L.C.; Dresser R E,
L.L.C.; GE Oil ; Gas, L.L.C.; G H D Services,
Incorporated; Stantec Consulting Services,
Incorporated; Halliburton Energy Services,
Incorporated; Louisiana Department of Environmental
Quality,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:20-CV-1174

No. 21-30523

Before DAVIS, ELROD, and HAYNES, *Circuit Judges*.

W. EUGENE DAVIS, *Circuit Judge*:

Plaintiffs-Appellants, forty-eight owners of property located near the former Dresser Industrial Valve Operations Facility ("Dresser Facility") in Rapides Parish, Louisiana, appeal the district court's order dismissing the Louisiana Department of Environmental Quality ("LDEQ") as improperly joined and denying their motion for remand. They further challenge the injunction issued by the district court against Plaintiff Michael Guillory from pursuing a proceeding in state court. Because we conclude that Defendants-Appellees failed to meet their burden of establishing that LDEQ was improperly joined, we REVERSE and REMAND to the district court with instructions to remand this case to Louisiana state court. We further VACATE the injunction.

## I. BACKGROUND

The Dresser Facility manufactured industrial valves from 1961 to 2016. In July 2020, Plaintiffs filed suit in state court against LDEQ and Defendants-Appellees, who are the various past and present owners and operators of the facility ("Facility Defendants"). Plaintiffs allege that hazardous waste from the facility has contaminated the soil and groundwater of their nearby properties.

### A. State Court Petition

In their petition for damages, Plaintiffs contend that the Facility Defendants failed to properly design, construct, and/or operate the Dresser Facility's waste removal processes to prevent leaching of contaminants into the groundwater and to prevent offsite migration onto and under Plaintiffs' properties. Plaintiffs allege that the Facility Defendants knew or should have known that operations at the Dresser Facility would result in contamination of the soil, surface waters, and groundwater of surrounding properties; that

they chose to conceal and cover up the contamination; and that they failed to responsibly and timely remove and/or remediate the toxic pollution such that the contaminants have now migrated, spread, and permanently damaged the drinking water and other aquifers underlying their properties. Plaintiffs assert their damages were caused by the Facility Defendants' "negligence, strict liability, and wanton and reckless misconduct," as well as "unlawful subsurface trespass." Plaintiffs also contend that they are entitled to punitive and/or exemplary damages under former Louisiana Civil Code article 2315.3.[1]

With respect to LDEQ, Plaintiffs allege that in 2012, LDEQ learned that hazardous waste was emanating from the Dresser Facility. They further assert that by 2014, LDEQ had determined the direction of groundwater flow and knew of the homes and businesses in the path of the contaminant plume, but that LDEQ did not inform Plaintiffs and other members of the public of the contamination until years later in 2020. Plaintiffs maintain that the damages they have sustained were caused by the "negligence and misconduct" of LDEQ in failing to timely and properly (1) report and warn them of the contamination of the groundwater and soils underlying their properties, (2) conduct testing and remediation, and (3) investigate the source of the contamination and the potential pathways of contamination from the facility into the environment.

---

[1] Former Article 2315.3 was effective from 1984 to April 16, 1996, and authorized recovery of punitive damages against a party that wantonly or recklessly disregarded public safety in the storage or handling of hazardous toxic substances. In order to be entitled to damages under the article, the offending conduct must have occurred during the article's effective period. *See Bonnette v. Conoco, Inc.*, 837 So.2d 1219, 1236 n.11 (La. 2003) (holding that Article 2315.3 was applicable to a claim arising in 1994).

## B. Removal to Federal District Court

One of the Facility Defendants, Halliburton Energy Services, Inc. ("Halliburton"), removed the case to federal district court on the basis of diversity jurisdiction. Halliburton asserted that because all Plaintiffs are diverse from all of the properly joined Facility Defendants, complete diversity existed. Halliburton contended that LDEQ, the only defendant whose presence would prevent diversity jurisdiction, was improperly joined. It argued, citing this court's decision in *Smallwood v. Illinois Central Railroad Company*,[2] that LDEQ was improperly joined "because there [wa]s no reasonable basis to predict that Plaintiffs will be able to recover from LDEQ." Specifically, Halliburton asserted that Plaintiffs' allegations against LDEQ for failing to adequately investigate and remediate the alleged contamination emanating from the Dresser Facility and failing to warn Plaintiffs of the alleged contamination do not "support[] a claim against LDEQ under Louisiana law."

Plaintiffs thereafter filed a motion for remand. Plaintiffs argued that LDEQ was not improperly joined because LDEQ owed them a duty under Louisiana law to warn them about the presence of hazardous materials in their drinking water. Additionally, Plaintiffs asserted that LDEQ had assumed control of the soil and groundwater contamination investigation and then concealed the findings from Plaintiffs. Plaintiffs argued that their damages were caused and/or exacerbated by the negligence and misconduct of LDEQ. In response, in addition to arguing that LDEQ owed no duties to Plaintiffs, Halliburton asserted that LDEQ's alleged actions fall within the

---

[2] 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

discretionary-acts exemption set forth in Louisiana Revised Statutes Annotated § 9:2798.1, making LDEQ immune from suit in this case.[3]

The district court denied Plaintiffs' motion for remand. It determined that under Louisiana law, LDEQ did not have a duty "to inform [Plaintiffs] of reported contamination within a particular timeframe or to otherwise oversee remediation in any particular manner." It further concluded that Louisiana law does not create a cause of action against LDEQ for contamination caused by private industry. Although noting that whether LDEQ owed a duty under the circumstances was "an issue of first impression" in the Western District of Louisiana, the district court observed that Louisiana's two other federal districts had also "conclude[ed] that the [L]DEQ is not liable in tort for failing to properly handle contamination."[4] Consequently, the district court determined that Halliburton met its burden of establishing that LDEQ was improperly joined and that its presence could be disregarded.[5] The district court therefore denied Plaintiffs' motion for remand and also dismissed LDEQ with prejudice. Because complete diversity existed among the remaining parties, the district court determined it had subject matter jurisdiction over this case.

Plaintiffs filed a motion for reconsideration, arguing that the district court's improper-joinder analysis was erroneous. They submitted additional

---

[3] Under LA. R.S. § 9:2798.1(B), "[l]iability shall not be imposed on public entities . . . based upon the exercise or performance or failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."

[4] The district court cited to *Butler v. Denka Performance Elastomer LLC,* No. 18-6685, 2019 WL 1160814 (E.D. La. Mar. 13, 2019) and *Landry v. Laney Directional Drilling, Co.*, No. 09-615, 2009 WL 3833831 (M.D. La. Nov. 16, 2009).

[5] Because the district court determined that "Plaintiffs failed to demonstrate a reasonable basis of recovery," the court did "not address whether LDEQ is protected by the 'discretionary acts' exemption."

authority for their argument that LDEQ owed a duty to warn—specifically, a 2001 Executive Order requiring certain state agencies, including LDEQ, of notifying "people who may be exposed to environmental contamination." Plaintiffs also contended that the district court's dismissal of LDEQ for improper joinder should have been without prejudice, instead of with prejudice. The district court granted the motion in part, determining that its dismissal of LDEQ should have been without prejudice, but denied the remainder of the motion.

### C. Motion for Rule 54(b) Certification and for Injunction

Halliburton thereafter moved the district court pursuant to Federal Rule of Civil Procedure 54(b) to certify, as a partial final judgment, its order dismissing LDEQ without prejudice and denying Plaintiffs' motion for remand. Halliburton also sought to enjoin state court proceedings, contending that one of the plaintiffs, Michael Guillory, had filed a "duplicative state court action." In the state court petition, Guillory requested a declaratory judgment that LDEQ owed a duty to notify him of contamination, citing the 2001 Executive Order and asserting that the Order had been codified in the Louisiana Administrative Code.[6] Halliburton argued that Guillory filed his state court action in an attempt to "collateral[ly] attack" the district court's legal conclusions underlying its dismissal of LDEQ. The other Facility Defendants all joined in Halliburton's motion.

The district court noted that the cited sections of the Louisiana Administrative Code in Guillory's state court action "delineate the procedures established by the [L]DEQ for notifying the public of contamination." In a footnote, the district court determined that although the Code set forth time frames for public notification of contamination, the

---

[6] *See* 33 La. Admin. Code Pt. I, § 109.

application of the timeframes to specific instances of contamination "is left solely to the discretion of the [L]DEQ." The district court granted the Facility Defendants' motion, entered a final judgment pursuant to Rule 54(b) of its order dismissing LDEQ and denying remand, and issued an injunction against Guillory from pursuing his state court action against LDEQ. Plaintiffs timely appealed.

## II. DISCUSSION[7]

On appeal, Plaintiffs argue that the district court abused its discretion in certifying as a final judgment under Rule 54(b) its order dismissing LDEQ. They additionally assert that the district court erred in determining that LDEQ was improperly joined and in denying their motion to remand. Finally, they assert that the district court erred in enjoining Plaintiff Guillory from prosecuting his claims against LDEQ in state court.

### A. Rule 54(b) Certification

Under 28 U.S.C. § 1291, this Court has appellate jurisdiction "from all final decisions of the district courts." "Where, as here, an action involves multiple parties, a disposition of the action as to only some of the parties does not result in a final appealable order absent a certification by the district court

---

[7] As an initial matter, we DENY Plaintiffs' motion to dismiss appeal and to dissolve injunction of state court proceedings. Plaintiffs argue that the Eleventh Amendment and Article III preclude a district court from conducting a *Smallwood* improper-joinder analysis when a state is a party defendant. However, as Plaintiffs acknowledge, our holding in *Melder v. Allstate Corp.*, 404 F.3d 328, 330 (5th Cir. 2005), that we may conduct a *Smallwood* improper-joinder analysis without considering the Eleventh Amendment forecloses Plaintiffs' argument. Furthermore, as we explain in Section II(A) *infra*, Plaintiffs' argument that this appeal has not been properly certified under Rule 54(b) has no merit. Finally, as we determine in Section II(B) *infra*, Defendants failed to meet their burden of establishing improper joinder; therefore, the district court lacked subject matter jurisdiction, and its injunction enjoining the state court proceedings consequently must be vacated. Therefore, Plaintiffs' motion to dissolve the injunction is denied as moot.

under Federal Rule of Civil Procedure 54(b)."[8]  That rule allows the district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay."[9]  This Court "review[s] a district court's decision to certify under Rule 54(b) for an abuse of discretion."[10]  In making the decision to certify under Rule 54(b), "the district court must consider judicial administrative interests as well as the equities involved."[11]  "So long as the district court's certification is not 'clearly unreasonable,' it will not be disturbed."[12]

Because Plaintiffs' action involves multiple parties, the order dismissing LDEQ and denying remand was appealable only if it was certified under Rule 54(b).  The district court concluded that Rule 54(b) certification was warranted because it would avoid "the hardship and injustice of a later remand or retrial if, upon appeal, the [L]DEQ is ultimately found to have been properly joined as a defendant."  It further believed that certification would avoid piecemeal appeals because the dismissal order "completely disposed of Plaintiffs' claims against [LDEQ]."  These bases for certification were not clearly unreasonable.

Nevertheless, Plaintiffs argue that the district court erred because it stated it was certifying its "Nov. 18th Order," which erroneously dismissed LDEQ with prejudice, instead of its amended order properly dismissing LDEQ without prejudice.  But Plaintiffs' argument ignores the clear intent

---

[8] *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 331 (5th Cir. 2002) (citation omitted).

[9] FED. R. CIV. P. 54(b).

[10] *Brown*, 311 F.3d at 332 (citation omitted).

[11] *Id.* (citation omitted).

[12] *Id.* (citation omitted).

of the district court and puts "form over substance," an approach we routinely reject when reviewing certification orders.[13]  The record unmistakably reflects the intent of the district court to certify the amended order properly dismissing LDEQ without prejudice.  Defendants moved for certification of "the interlocutory order dismissing [L]DEQ without prejudice."  The district court granted Defendants' motion and specifically acknowledged in its certification ruling that it had amended its November 18 order to reflect that the dismissal of LDEQ was without prejudice.  Plaintiffs' argument on this issue is wholly without merit.

Plaintiffs also challenge the district court's Rule 54(b) certification because it "effectively circumvents the rules prohibiting appellate review of remand orders."  Although remand denials generally are not reviewable on appeal,[14] this Court permits review of a remand denial when the order is (1) coupled with a Rule 12(b)(6)-type dismissal and (2) certified as final under Rule 54(b).[15]  Those two conditions are present here.

Although difficult to follow, Plaintiffs appear to argue that the district court's decision dismissing LDEQ without prejudice cannot be certified under Rule 54(b) because, as we explained in *International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*,[16] such dismissals are not

---

[13] *See Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc) (per curiam) (stating that this court rejects a "form-over-substance" approach when determining whether the district court has properly certified a decision under Rule 54(b)).

[14] *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 539 (5th Cir. 2005) ("An order denying a motion to remand is not appealable as a final decision within the meaning of 28 U.S.C. § 1291.").

[15] *See, e.g.*, *Ford v. Elsbury*, 32 F.3d 931, 935 & n.5 (5th Cir. 1994); *Aaron v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 876 F.2d 1157, 1160 (5th Cir. 1989); *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. Unit A Dec. 1981).

[16] 818 F.3d 193, 210 (5th Cir. 2016).

merits determinations but jurisdictional ones. It is true that we emphasized in that case that "the only ground for dismissing any improperly joined, nondiverse party is lack of subject matter jurisdiction," because "[t]o dismiss on [the merits] would require the presence of jurisdiction that does not exist."[17] But the main focus of our opinion was deciding which pleading standard, federal or state, applies when determining whether a nondiverse defendant has been improperly joined. We held that the federal pleading standard applies. And, we made no changes to the rule allowing appellate review of remand denials that are coupled with "Rule 12(b)(6)-type dismissals." We simply clarified that dismissals of improperly joined nondiverse defendants are "[u]nlike the typical dismissal[s] under Rule 12(b)(6)" which operate as merits determinations, and are more like Rule 12(b)(1) dismissals for lack of jurisdiction. Consequently, such dismissals must be without prejudice.

If Plaintiffs are contending that dismissals without prejudice for lack of jurisdiction are not appealable, they are mistaken.[18] And, they cite no authority holding that when such a dismissal involves one of multiple defendants, the district court cannot then certify its decision under Rule 54(b), as the district court did here. In sum, the district court did not abuse its discretion in certifying as a final judgment under Rule 54(b) its order dismissing LDEQ without prejudice as improperly joined and denying Plaintiffs' motion for remand.

---

[17] *Id.*

[18] We review de novo a district court's dismissal for lack of subject matter jurisdiction, which are dismissals without prejudice. *See Carver v. Atwood*, 18 F.4th 494, 496, 498 (5th Cir. 2021).

No. 21-30523

### B. Improper Joinder

This Court reviews the denial of a remand motion and the determination that a party is improperly joined de novo.[19] "[W]e have recognized two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[20] Because there is no contention that Plaintiffs fraudulently pleaded jurisdictional facts, the second method is before us today.

In our en banc decision in *Smallwood*, we stated the standard for improper joinder as follows: "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[21] Importantly, in making this determination, we must "resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law, in [Plaintiffs'] favor."[22] When controlling state law "is too uncertain to support improper joinder," remand to state court is required.[23]

---

[19] *Int'l Energy Ventures Mgmt., L.L.C., v. United Grp. Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (denial of remand motion); *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009) (improper joinder).

[20] *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (2004) (en banc) (internal quotation marks and citation omitted).

[21] *Id.*

[22] *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) (internal quotation marks and citation omitted).

[23] *Id.* at 244 (reversing improper-joinder dismissal and denial of remand because "application of the Texas unlawful acts rule to Plaintiffs' claim [was] too uncertain to support finding of improper joinder").

As set forth above, Plaintiffs allege in their petition that LDEQ failed, *inter alia*, to timely warn them of the contamination of the groundwater and soils underlying their properties and that they are entitled to damages under Louisiana law.  The district court noted that whether LDEQ owed a duty under the circumstances was "an issue of first impression" in its district and that neither the Louisiana Supreme Court nor this Court had squarely addressed the underlying legal issues.  However, the court noted that Louisiana's two other federal districts had also "conclude[ed] that the [L]DEQ is not liable in tort for failing to properly handle contamination."[24] The district court determined, therefore, that Defendants met their burden of establishing that LDEQ was improperly joined and that its presence could be disregarded.

Although the district court carefully reviewed certain Louisiana constitutional provisions and statutes in determining that Plaintiffs had not stated a cognizable claim against LDEQ, we note (as described below) that at least one Louisiana appellate court[25] has recognized that LDEQ may be sued in tort for its negligence under circumstances similar to those alleged by Plaintiffs.[26]    Additionally, it is unclear whether LDEQ would have discretionary immunity under LA. R.S. § 9:2798.1 in this case.[27]  Because

---

[24] The district court cited to *Butler v. Denka Performance Elastomer LLC,* No. 18-6685, 2019 WL 1160814 (E.D. La. Mar. 13, 2019) and *Landry v. Laney Directional Drilling, Co.*, No. 09-615, 2009 WL 3833831 (M.D. La. Nov. 16, 2009).

[25] *See Wilson v. Davis*, 991 So.2d 1052 (La. App. 1st Cir. 2008).

[26] *See Rico*, 481 F.3d at 243 (noting that "[a]t least one Texas case support[ed] a contrary view" of Defendant's contention that Texas unlawful acts rule barred Plaintiffs' claims).

[27] *See id.* at 236, 244 (when application of a state rule barring plaintiff's claim "is too uncertain," and "there are alternative reasonable interpretations that a [state] court might reach," "ambiguity must be resolved in favor of the plaintiff" when determining improper joinder).

under our standard for determining improper joinder, any ambiguity or uncertainty in the controlling state law must be resolved in Plaintiffs' favor,[28] we must reverse the district court's dismissal without prejudice of LDEQ and its denial of Plaintiffs' motion for remand. We explain our reasoning in further detail below.

### 1. Louisiana law

The Louisiana Constitution provides for a waiver of sovereign immunity in state court for the state, a state agency, or a political subdivision "as to suit and liability in contract and tort cases."[29] In *Wilson v. Davis*, the LDEQ was sued by Plaintiff Johnna Wilson, individually and on behalf of her minor children, who bought property in 1997 adjacent to a facility licensed by LDEQ to handle radioactive materials.[30] Wilson alleged that LDEQ was aware as early as 1979 that the facility was violating state regulations governing radioactive materials and that LDEQ knew the soil behind the facility had been contaminated.[31] Wilson contended that LDEQ ceased inspecting the property in the early 1980s, and although it resumed inspections in 1988, LDEQ allowed the facility to continue its operations even though it found violations of state regulations governing radioactive materials and knew of the violative contamination.[32] Wilson contended that if LDEQ had acted appropriately, the parties would never have been exposed

---

[28] *See id.* at 239.

[29] *Fulmer v. State, Dep't of Wildlife and Fisheries*, 68 So.3d 499, 503 (La. 2011) (citation omitted); *see* LA. CONST. ART. 12, § 10(A) ("Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.").

[30] 991 So.2d 1052, 1056 (La. App. 1st Cir. 2008).

[31] *Id.*

[32] *Id.*

to hazardous levels of radioactive materials.[33] She also alleged that a scientist with LDEQ failed to report adequately and accurately the extent of the contamination on the property.[34] The prior owners of the property, whom Wilson also sued, filed a third-party demand against LDEQ asserting many of the same claims asserted by Wilson.[35]

The Louisiana First Circuit Court of Appeal determined that pursuant to LA. R.S. § 30:2012(D),[36] LDEQ had a duty to perform annual inspections of the facility, and that under LA. R.S. § 30:2012(A)(1), those inspections had to be "meaningful" so that LDEQ could determine whether "[e]nvironmental standards ha[d] been achieved."[37] The court held that LDEQ's compliance with these statutes did "not involve policymaking or discretionary duties" and that failure to comply with the statutes did not fall within the scope of the discretionary-act immunity set forth in § 9:2798.1.[38]

Although the *Wilson* plaintiffs were able to establish that LDEQ owed them non-discretionary duties to perform annual and meaningful inspections of the facility it had licensed, they had to come forward with factual support showing that LDEQ breached those duties.[39] They were unable to do so. Specifically, the *Wilson* plaintiffs failed to produce any affidavits, depositions,

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] During the relevant time period, LA. R.S. § 30:2012(D) provided: "A monitoring inspection of all facilities operating with a permit issued pursuant to this Subtitle shall be made at least once annually." In 2003, however, this provision was amended, and the "at least once annually" language was deleted. *See* LA. R.S. § 30:2012(D)(1).

[37] *Wilson*, 991 So.2d at 1060 (citing LA. R.S. § 30:2012(A)(1) & (D)).

[38] *Id.*

[39] *Id.*

or other admissible evidence supporting their allegations that LDEQ "failed to conduct 'annual' or 'meaningful' inspections."[40]  Therefore, the court concluded that summary judgment was warranted on that claim.[41]

With respect to the *Wilson* plaintiffs' claim that LDEQ failed to inform the public and neighboring property owners about the dangers of the site until 2000, the court determined that the plaintiffs were unable to cite any non-discretionary duty mandating LDEQ do so.[42]  Therefore, the court rendered judgment in favor of LDEQ.[43]

*Wilson* is significant in this matter for three reasons.  First, the court acknowledged that LDEQ may be sued in tort by owners of property affected by contamination from facilities LDEQ licenses.  Property owners are not limited to seeking redress from LDEQ through administrative channels.  Second, the court acknowledged that LDEQ owed certain non-discretionary duties to perform annual and meaningful inspections.[44]  Third, the court did not reject the possibility that LDEQ might owe other duties, for example, a duty to warn the public and neighboring property owners about the dangers of contamination from a site it licenses, if the plaintiffs could cite to a non-discretionary duty mandating LDEQ do so.

---

[40] *Id.* at 1061.

[41] *Id.*

[42] *Id.* at 1063.  At the time of the events in *Wilson*, the provisions regarding public notification of contamination (discussed *infra*) set forth in Title 33, Chapter One of the Louisiana Administrative Code were not yet effective.  *See* 33 LA. ADMIN. CODE PT. I, § 105 (providing that public notification regulations "shall become effective on October 20, 2003").

[43] *Wilson*, 991 So.2d 1063.

[44] As previously noted, in 2003, LA. R.S. § 30:2012 was amended such that annual inspections are no longer mandated.  *See* LA. R.S. § 30:2012(D)(1).

No. 21-30523

Based on *Wilson*, we cannot clearly say (contrary to the district court's conclusion) that "Louisiana law does not provide for civil liability against the [L]DEQ." Furthermore, the Plaintiffs in this case have cited to authority providing that, under certain circumstances, LDEQ has a non-discretionary duty to warn the public and neighboring property owners about dangerous contamination from facilities it licenses. Specifically, Plaintiffs cite to regulations in the Louisiana Administrative Code,[45] which became effective in 2003 after the events in *Wilson*, "establish[ing] procedures for notifying those members of the public whom [LDEQ] determines are likely to be adversely affected by a release that poses a significant risk of adverse health effects" and "that exceed[s] the applicable federal or state health and safety standard."[46]

---

[45] The dissent mistakenly contends that Louisiana law prohibits reliance on a regulation as support for a duty imposed on a state agency. As one of the cases cited by the dissent provides, "[m]ost cases alleging negligence on the part of a public body" are analyzed under the "classic duty-risk analysis." *Hebert v. Rapides Parish Police Jury*, 974 So.2d 635, 643 (La. 2007) (citations omitted). And, under the classic duty-risk analysis, Louisiana courts have imposed tort duties based on regulations. *See, e.g., Gatlin v. Entergy Corp.*, 904 So.2d 31, 35 (La. App. 4th Cir. 2005) ("[V]iolations of OSHA regulations are relevant to establishing the negligence of a party."); *Nicks v. Teche Elec. Co-op, Inc.*, 640 So.2d 723, 729 (La. App. 3d Cir. 1994) (affirming trial court's determination that state and federal traffic safety "regulations create[d] a duty on the part of [defendant]"); *Manchack v. Willamette Indus., Inc.*, 621 So.2d 649, 652 (La. App. 2d Cir. 1993) (stating that "a plaintiff 'may properly offer a statute or regulation [such as OSHA] as evidence of a defendant's negligence'") (citation omitted).

[46] 33 La. Admin. Code Pt. I, §§ 101(A), 102 (A). The Defendants and the dissent contend that Plaintiffs waived, in the district court and on appeal, their "duty theory" based on the notification provisions in the Louisiana Administrative Code. We disagree. First, Plaintiffs have asserted the same "duty theory"—that LDEQ had a duty to timely warn them of the contamination of their property—throughout this litigation. Plaintiffs' authority supporting their tort claim has evolved since the filing of Plaintiffs' petition, but the case cited by the dissent for waiver, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 316 (5th Cir. 2002), does not prohibit assertion of additional authority in support of a tort claim. That case held that Plaintiffs could not switch its breach of contract claim advanced in the district court to a tort claim on appeal.

16

Section 109 of the chapter entitled "Public Notification of Contamination" sets forth a "chart provid[ing] the content and time frame for providing notification."[47]  It specifies the "triggering events" for two different types of public notice.  The first type of notice is triggered when LDEQ "becomes aware of information and determines that a release is likely to have off-site impacts that exceed the applicable federal or state health and safety standard and pose a significant risk of adverse health effects."[48]  "Off-site" is defined as "areas beyond the property boundary of the release site."[49]  The second type of notice is triggered when the LDEQ "confirms off-site impact that exceeds the applicable federal or state health and safety standard and the department determines that the off-site impact poses a significant risk of adverse health effects."[50]  The time period for providing public notice for these two triggering events is the same:  "When an emergency or exigent circumstance exists, notice shall be given as soon as practicable under the circumstances by using any reasonable means or, otherwise, within 30 days of the triggering event."[51]

Defendants argue, and the district court determined, that LDEQ is entitled to discretionary immunity under § 9:2798.1, because the public

---

*Id.* at 317.  Moreover, the notification provisions at issue are not being addressed for the first time on appeal.  The district court specifically addressed these provisions in its order granting Rule 54(b) certification of its order denying remand and issuing the injunction.  Although Plaintiffs did not fully brief the provisions in their opening appellate brief, they did cite to *Frazier v. Pioneer Americas, LLC*, No. 05-1338-JJB, 2006 WL 8435040 (M.D. La. Nov. 6, 2006), which centered on whether LDEQ owed a duty under § 109.  Therefore, we believe it appropriate for us to consider Plaintiffs' § 109 arguments.

[47] 33 LA. ADMIN. CODE PT. I, § 109(D).

[48] *Id.*

[49] *Id.*, § 107(A).

[50] *Id.*, § 109(D).

[51] *Id.*

notification provisions leave the LDEQ with broad discretion on when and how to provide notice. We, however, believe "there are alternative reasonable interpretations that a [state] court might reach."[52] Specifically, the notification provisions contain the word "shall," and they set forth specific triggering events mandating notice and specific times when that mandatory notice is to be provided. Although the triggering events depend on determinations and confirmations made by LDEQ (and to that extent is discretionary), once those triggering events occur, notice is mandated "as soon as practicable" or otherwise "within 30 days of the triggering event."[53]

Because we must construe any ambiguity or uncertainty in the controlling state law in Plaintiffs' favor,[54] Defendants' discretionary-immunity argument cannot support a finding of improper joinder in this case.

### 2. Decisions by this Court and federal district courts

As stated above, in determining that LDEQ was improperly joined, the district court cited as supporting authority, *Butler v. Denka Performance Elastomer, LLC.*[55] We find that case distinguishable for a number of reasons. First, the district court addressed the issue whether LDEQ had a duty under Louisiana law to warn the community regarding the risks of contamination in the context of a Rule 12(b)(6) motion filed by LDEQ. The issue did not arise in the context of a motion for remand after a removal based on improper joinder. Therefore, the district court was not required to apply the standard

---

[52] *See Rico*, 481 F.3d at 243.

[53] § 109(D). Plaintiffs' allegations appear to place this case within the mandatory provisions of § 109. Specifically, Plaintiffs have alleged that LDEQ had determined by 2014 the direction of groundwater flow and knew of the homes and businesses in the contaminant plume, but did not inform them of the contamination until years later in 2020.

[54] *See Rico*, 481 F.3d at 239.

[55] No. 18-6685, 2019 WL 1160814 (E.D. La. Mar. 13, 2019).

set forth in *Rico* we must apply here.[56]  Second, there was no discussion regarding the Louisiana First Circuit Court of Appeal's decision in *Wilson* or the notification provisions set forth in the Louisiana Administrative Code.

Furthermore, in her briefing to this Court, the plaintiff in *Butler* did "not meaningfully challenge the district court's dismissal of [her] negligence claim against [L]DEQ."[57]  Therefore, we "deemed" her appeal of the dismissal of that claim "abandoned."[58]  Consequently, we made no ruling on the merits of the district court's decision that LDEQ owed no duty.

In our decision in *Acosta v. Denka Performance Elastomer, L.L.C.*,[59] we affirmed the district court's decision, which relied heavily on its reasoning in *Butler*, that LDEQ was improperly joined.  However, we simply stated that we agreed with the district court that LDEQ was improperly joined and "that no further analysis of this issue is warranted."[60]  *Acosta* is an unpublished decision, and therefore has no precedential value.  We also do not find it persuasive as no discussion or analysis of Louisiana law was offered.

In sum, we conclude that the above prior cases from our Court do not control our decision herein.

### III. CONCLUSION

Based on the foregoing, Defendants failed to meet their burden of establishing that LDEQ was improperly joined. Accordingly, we REVERSE and REMAND to the district court with instructions to remand this case to

---

[56] Consequently, the district court did not have the option of availing itself of *Rico* to avoid a decision on the merits by finding Louisiana law unclear.

[57] *Butler v. Denka Performance Elastomer, LLC*, 16 F.4th 427, 446 n.27 (5th Cir. 2021).

[58] *Id.*

[59] 21-30136, 2022 WL 1091534 (5th Cir. Apr. 12, 2022) (per curiam).

[60] *Id.* at *3.

Louisiana state court.  Because the district court lacked subject matter jurisdiction, it had no authority to issue an injunction.  Therefore, we further VACATE the injunction.  Plaintiffs' motion to dismiss appeal and to dissolve injunction is DENIED.

HAYNES, *Circuit Judge*, concurring in part and dissenting in part:

I concur in the determination that we have jurisdiction under Rule 54(b). I also concur that the district court's injunction should be vacated, however, I do so for a different reason. Under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, this power is limited by the Anti-Injunction Act, which generally prohibits federal courts from "grant[ing] an injunction to stay proceedings in a State court." *Id.* § 2283. A district court may only enjoin state court proceedings under three narrow exceptions: (1) when the court is expressly authorized to do so by an Act of Congress; (2) "where necessary in aid of [the court's] jurisdiction"; or (3) "to protect or effectuate [the court's] judgments." *Id.*; *see also Smith v. Bayer Corp*, 564 U.S. 299, 306 (2011) (recognizing narrowness of exceptions). Otherwise, the Act is "an absolute prohibition . . . against enjoining state court proceedings." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970).

After the district court dismissed LDEQ, Plaintiff Guillory filed a declaratory judgment action against the agency in Louisiana state court. He sought a declaratory judgment stating that (1) LDEQ owed a duty to Guillory and other individuals to provide timely notice of potential contamination, and (2) he has a cause of action against LDEQ. In response, Defendant Halliburton moved the district court for an order enjoining Guillory from prosecuting his state court declaratory judgment action. The district court issued the injunction, concluding that two exceptions to the Anti-Injunction Act—the "protect and effectuate" and "authorized by an Act of Congress" exceptions—applied.

For that first exception to apply, the following requirements must be met:

> (1) parties in the later action must be identical to or in privity with the parties in the previous action; (2) judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits.

*Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 273 (5th Cir. 2009). However, it is clear that the dismissal of LDEQ was not a final judgment, so the third requirement was plainly not met. Accordingly, this exception does not apply.

The district court also concluded that the exception for "authorization by an Act of Congress" applied. Importantly, neither party raised this exception nor briefed it before the district court. Accordingly, the district court violated the party presentation principle by invoking this exception sua sponte. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (noting that "[c]ourts are essentially passive instruments of government" and should "normally decide only questions presented by the parties." (quotation omitted)). Even if considered, the subsequent case filed by Plaintiff Guillory was not identical to the original federal action, so it does not satisfy the standard for this exception. "Although the removal statute only commands the state court to stay the case that was actually removed, it has been interpreted to authorize courts to enjoin later filed state cases that were filed for the purpose of subverting federal removal jurisdiction." *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1069 (8th Cir. 1996).

Accordingly, while I conclude below that LDEQ was properly dismissed, I do agree with the majority opinion that the injunction should be vacated.

No. 21-30523

Turning to the main question in the case, whether LDEQ was improperly joined such that the district court had jurisdiction, I respectfully dissent.

One of the key parts of the majority opinion is the assertion of a "duty theory" based on the Louisiana Administrative Code (particularly § 109). However, Plaintiffs failed to raise § 109 in their initial complaint or their motion to remand. Thus, this theory is waived.

To summarize, Plaintiffs first waived their § 109 duty theory by failing to raise it in their initial complaint. It is well-established that the improper joinder analysis depends on the allegations *in the complaint*. *See Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (the court conducts "a Rule 12(b)(6)-type analysis" evaluating "the *allegations of the complaint* to determine whether *the complaint* states a claim under state law." (emphasis added)). For example, in *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 316 (5th Cir. 2002), the plaintiffs alleged that the defendant owed a duty based on a "failure to perform" standard. *Id.* But on appeal, the plaintiffs advanced another theory, premised on "general negligence" principles. *Id.* This court rejected the plaintiffs' belated invocation of the "general negligence" argument because the plaintiffs could not point to anywhere in their *complaint* that "advance[ed] such an allegation." *Id.* at 316. As this court stated, the plaintiffs "did not rely below on the contention" they advanced on appeal, so "the argument [wa]s waived."[1] *Id.* at 317.

---

[1] I recognize that *Great Plains Trust Co.* does not stand for the proposition that a party is prohibited from advancing new authority to support their argument. *See* 313 F.3d at 316. But the unique context of Louisiana tort law is critical here. As discussed later, Louisiana courts require a plaintiff to prove "the defendant had a duty to conform his conduct to a specific standard." *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 443 (5th Cir. 2021). Plaintiffs failure to raise the specific standard then in their

No. 21-30523

Similarly, here, Plaintiffs' complaint is void of any mention of § 109; indeed, Plaintiffs did not even mention this section until Plaintiff Guillory cited it in his petition for declaratory relief in state court, months later.  So, at bottom, there's really two problems: first, there's no basis for the court to consider § 109 when determining whether joinder was proper since § 109 was absent from Plaintiffs' complaint, and second, Plaintiffs waived this theory by failing to plead it.  While I am well aware that a lack of subject matter jurisdiction itself cannot be waived, the allegations in the complaint are what determine the improper joinder analysis, and the failure to so plead thus is a waiver.

Additionally, to the extent they could raise it later, Plaintiffs waived this duty theory by failing to raise it in their motion to remand.  It is well-established that to preserve an argument for appeal, a party "must press and not merely intimate the argument" before the district court in a way such that the "district court has an opportunity to rule on it."  *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).  Otherwise, this court "will not address it on appeal."  *Id.*  Here, Plaintiffs did not raise § 109 in their motion to remand.  Instead, Plaintiffs' motion cited the Louisiana Constitution and other Louisiana statutes to establish that LDEQ owed a duty—§ 109 was absent from their motion and their reply. [2]

---

complaint or opposition to remand certainly weighs in favor of a conclusion that the argument has been waived.

[2] The majority opinion disagrees and contends that § 109 is not being addressed for the first time on appeal because the district court considered the provision in granting Rule 54(b) certification; but the district court issued its Rule 54(b) order *months* after it made its ruling on improper joinder.  Therefore, the "district court ha[d] [no] opportunity to rule on" § 109; the mere fact that it was raised at some point later on is insufficient to overcome waiver.  *See FDIC*, 15 F.3d at 1327.

No. 21-30523

To the extent the majority opinion suggests that the mere reference to a "duty theory" is sufficient to raise § 109, I respectfully disagree. As we noted in *Butler*, under Louisiana law, the theory supporting a duty must be specific, not generic. *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427, 445 (5th Cir. 2021). Plaintiffs, by contrast, flopped from one generic basis of a duty to another; they raised this one only after the district court had already ruled on the motion to remand, citing it only in connection with the issue of granting a Rule 54(b) motion. In any event, this specific argument was not raised in Plaintiff's initial appellate brief, only their reply, so, again, it is plainly waived.[3] *See Waste Management, Inc. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 533 n.2 (5th Cir. 2020).

But, even if a duty based on § 109 wasn't waived, the majority opinion improperly concludes that LDEQ has a duty under the regulations in the Louisiana Administrative Code. The notion that these rules establish a duty under which LDEQ can be sued is inconsistent with Louisiana law which recognizes "duties" imposed by "legislation, ordinance or rule of law." *Cormier v. T.H.E. Ins. Co.*, 745 So.2d 1, 8 (La. 1999). Despite this requirement, neither the majority opinion nor the Plaintiffs cite a Louisiana case imposing a tort duty on a Louisiana state agency based on a

---

[3] The majority opinion contends that Plaintiffs sufficiently preserved this argument on appeal because their opening briefs cites to *Frazier v. Pioneer Americas, LLC*, No. 05-1338-JJB, 2006 WL 8435040 (M.D. La. Nov. 6, 2006). I respectfully disagree. Plaintiffs' brief makes two passing references to *Frazier*, but it does not even once reference § 109. Indeed, Plaintiffs admitted as much at oral argument that they did not argue § 109 in their opening brief. The failure to sufficiently raise the duty theory is plainly waiver. *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (explaining that "[f]ailure adequately to brief an issue on appeal constitutes [forfeiture] of that argument" and finding that argument was [forfeited] where a party "fail[ed] to raise it in its opening brief").

No. 21-30523

regulation. This is particularly a problem since Louisiana is a state of civil law, not common law. [4]

Further, even if a regulation could impose a duty on a state agency, nothing says that § 109 create a *mandatory* duty. Louisiana has held that the discretionary acts exemption does not apply if the regulation "specifically prescribes a course of action, *i.e.*, where there is no element of choice or discretion involved." *Wilson v. Davis*, 991 So.2d 1052, 1058 (La. Ct. App. 2008). But here, each of the regulations Plaintiffs cite to grant LDEQ significant discretion. The stated purpose of the regulations is "to establish procedures for notifying those members of the public *whom the department determines* are likely to be adversely affected." 33 LA. ADMIN. CODE PT I, § 101(A) (emphasis added). Further, § 109 provides that the LDEQ "shall

---

[4] The majority opinion misunderstands my conclusions on this point. It states that "[t]he dissent mistakenly contends that Louisiana law prohibits reliance on a regulation as support for a duty imposed on a stage agency." I do not contend that Louisiana law prohibits reliance on such authority. Instead, I note that the cases in this framework that the majority opinion and Plaintiffs rely on do not impose a duty *on a state agency* based on the agency's supposed non-compliance with a regulation. *See Gatlin v. Entergy Corp.*, 904 So.2d 31, 35 (La. App. 4th Cir. 2005) (OSHA regulations relevant to determine whether private owner of utility pole was negligent); *Nicks v. Teche Elec. Co-op, Inc.*, 640 So.2d 723, 729 (La. App. 3d Cir. 1994) (DOTD regulations relevant to determining whether private utility company was negligent in personal injury case); *Manchack v. Willamette Indus., Inc.*, 621 So.2d 649, 652 (La. App. 2d Cir. 1993) (OSHA regulations relevant to determining whether private plywood manufacturer was negligent in premises liability case). This distinction—between private entities/individuals on one hand and state agencies on the other—is important. In the context of *state agency* liability, Louisiana courts have focused on whether a "statute or reported decision" places an affirmative duty on the agency. *See, e.g.*, *Pickering v. Washington*, 260 So. 2d 340, 342 (La. App. 5th Cir. 1972); *cf. Hebert v. Rapides Par. Policy Jury*, 974 So. 2d 635, 642–43 (La. 2007) (emphasizing that "most cases alleging negligence of the part of a public body" are evaluated under the "duty-risk analysis," under which the plaintiff must prove that "there is a[] jurisprudential or statutory rule, or policy reason, why under the facts and circumstances of the case, the state would owe a duty to compensate the plaintiff for his personal injuries.").

issue notice of a release that poses a significant risk of adverse health effects to persons whom the department *reasonably determines* are likely to be adversely affected by the release." *Id.* at § 109(B) (emphasis added). The italicized language in each of these provisions contradicts the conclusion that the regulations are mandatory, rather than discretionary.

The majority opinion concludes that "at least one Louisiana appellate court has recognized that LDEQ may be sued in tort for its negligence under circumstances similar to those alleged by Plaintiffs." It relies on *Wilson*, 991 So.2d at 1052. In *Wilson*, a plaintiff brought a negligence claim against LDEQ, alleging that it was aware of environmental contamination on her property but failed to conduct an inspection and allowed the defendant to continue its pollution. *Id.* LDEQ moved for summary judgment, arguing that the plaintiff could not establish that it owed her any "specific non-discretionary duty." *Id.* at 1057. The Louisiana First Circuit Court of Appeal determined that LDEQ had a duty based on La. R.S. § 30:2012(D), which, at the time, required the LDEQ to "perform annual inspections" of permitted facilities. *Id.* at 1059–60. The court determined that LDEQ's compliance with this statute did not involve discretionary duties. *Id.* But this statute has since been revised—the amended provision, effective since 2003, provides only that DEQ shall "[m]onitor[] inspections of facilities operating with a permit[.]" *See* La. R.S. § 30:2012(D) (amended 2003). It removes the requirement that inspections be conducted annually.

The fact that the statute no longer prescribes a specific "course of action" or mandates the way LDEQ must perform its inspections is material. The *Wilson* court's holding was dependent on the existence of a mandatory duty—but the removal of the instruction to conduct inspections "annually" makes LDEQ's performance under the regulation appear more discretionary, rather than mandatory. The majority opinion doesn't really address this nuance, intimating at it only in a footnote. But, because of that

distinction, I conclude that *Wilson*'s holding does not create the requisite ambiguity to the proposition that Plaintiffs might have a claim against LDEQ. Put another way, *Wilson* dealt with a mandatory duty that is not present currently (or during the relevant time) in the § 109 provision relied upon by the majority opinion.

I therefore respectfully dissent as to the decision that we lack jurisdiction such that we must remand the case to the district court to remand to the state court.